No. 23,220.

M. A. SNYDER, *Appellee,* v. C. J. ERIKSEN, *Appellant.*

SYLLABUS BY THE COURT.

1. MASTER AND SERVANT—*Negligent Driving of Truck by Employee—Employee Acting Within Scope of His Employment—Master Liable for Employee's Negligence.* An employee in a furniture establishment who had been employed to do general work in the store and assist other employees in delivering goods, but had not previously been assigned to the duty of driving trucks, went out to the fairgrounds to help a superior employee who had been given charge of assembling and setting up an exhibit, and when the noon hour arrived the employee was directed by his superior to take a motor truck and drive to his home to get his dinner in order that he might sooner return and continue his work. On the way to his dinner he drove the truck in a negligent manner and struck and injured a pedestrian on the street. *Held,* that he was then acting within the scope of his employment and in furtherance of his employer's business, and that his employer was liable for the negligent injury.

2. SAME—*Instructions.* The instructions given to the jury examined and held to be without prejudicial error.

3. SAME—*Court's Power to Supervise Special Interrogatories and Answers Thereto.* It is competent for the court to supervise and shape special interrogatories that are submitted to a jury and it may reject questions that are improper or immaterial and limit the questions to ultimate facts on controverted issues.

4. SAME. The court may also explain the questions and instruct the jury as to the law applicable to them, exercising caution not to express an opinion as to controverted facts; and *held,* that the action of the court in explaining the questions and advising the jury as to the applicable rules of law was not an invasion of the province of the jury.

5. SAME. If the answers returned by the jury are indefinite or incomplete or show a misconception of the questions, the court may, on the application of either party or on its own motion, require the jury to make the answers more definite and complete or to correct manifest errors in the answers.

6. SAME—*Amendment of Petition at Close of Evidence—No Error.* No error was committed in permitting the plaintiff to amend his petition at the close of defendant's evidence so as to state in more detail an element of the negligence charged against defendant.

7. SAME—*Damages Not Excessive.* Under the evidence it is held that the damages awarded are not excessive.

Snyder v. Eriksen.

Appeal from Douglas district court; CHARLES A. SMART, judge. Opinion filed June 11, 1921. Affirmed.

*George K. Melvin*, and *R. E. Melvin*, both of Lawrence, for the appellant.

*J. B. Wilson*, and *A. C. Wilson*, both of Lawrence, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: A motor truck owned by the defendant, C. J. Eriksen, and driven by Vernon Pettit, his employee, was driven upon a sidewalk, running down and severely injuring the plaintiff, M. A. Snyder, who was walking upon the sidewalk. She recovered a judgment for $500 and the defendant appeals.

Defendant was a dealer in household goods in Lawrence, and had several employees, among whom was Pettit who was principally engaged in blacking stoves and assisting other employees in the delivery of goods. On the day of the accident the employees of defendant were engaged in assembling and setting up an exhibit of defendant's goods at the fairgrounds near the city. For that purpose they used two trucks. One of them was driven by an employee, Crossgrove, and the other by McPherson. Pettit went out to the fairgrounds in the truck driven by McPherson, and after working for a short time, McPherson and Pettit returned to the city for other goods, McPherson driving the truck. When they arrived at the store McPherson found customers waiting for attention and he directed Pettit to drive the truck loaded with exhibits back to the fairgrounds, and this was done. When the noon hour arrived, Crossgrove, who was then in charge of the exhibits, said to Pettit, "as you have a long distance to go to dinner, you had better take the truck so you will get back to work sooner." He took the truck and while on the way to dinner he had difficulty with the steering gear and was unable to guide or control the truck. He ran the truck against a wagon and then over the curb and up on the sidewalk, knocking down and running upon the plaintiff who happened to be walking there.

The charges of negligence were the driving of the truck at a dangerous rate of speed on the wrong side of the street, in failing to stop the truck when it approached the wagon in the

street, and the sidewalk, and the further negligence of providing and using a truck with a defective steering gear which rendered it uncontrollable at times. There was abundant evidence to sustain the charge of the negligent handling of the car, but the principal contention of the defendant is that the evidence failed to show that the defendant was responsible for the acts of Pettit while driving the truck. The claim is that Pettit was not acting within the scope of his employment in taking and driving the truck to dinner, but was acting for himself and in pursuit of his own purposes. The contention is that the evidence does not show that the defendant ever authorized him to use the truck for any purpose at any time or under any circumstances, and that any direction given Pettit by Crossgrove or McPherson was without authority, and that no liability could arise against him for the negligent acts of Pettit. The turning point in the case is whether Pettit was acting within the scope of his employment while driving the car at the time of the accident or, in other words, was he acting in furtherance of his master's business as distinguished from his own private business or pleasure. Where one person is injured by the negligence of another he ordinarily seeks and is entitled to indemnity from the one whose negligence caused the injury. Where the one who directly inflicted the injury is the servant of another and was at the time acting under the directions of the master or engaged in his business and in furtherance of his interests, the injured person may look beyond the direct author of the wrong and require the master to respond for the damages sustained. It is fundamental that the owner of an automobile is not required to respond in damages for injuries caused by the negligence of the driver unless the driver was the servant or agent of the owner, and was at the time acting within the line of his duty and in furtherance of the master's business. (*Halverson v. Blosser*, 101 Kan. 683, 168 Pac. 863.) Here Pettit was the employee and servant of the defendant. He was in the line of duty when he went out to the fairgrounds to assist Crossgrove in placing the exhibit, and when under the direction of McPherson he drove the truck loaded with goods from the store to the fairgrounds. He was within the scope of his employment when he assisted Crossgrove in setting up the exhibit. When the noon hour arrived a somewhat different

Snyder v. Eriksen.

situation arose. If in going to and getting his dinner he was using his own time to accomplish his own ends and was not acting under the direction of the master or in furtherance of his business, the defendant was not responsible for the negligence of Pettit. If he had taken the truck without permission and had occasioned the injury to plaintiff while on a mission to get his dinner or on an errand purely personal to himself, the defendant would have been free from liability. It cannot be said, however, that Pettit was acting for himself and exclusively pursuing his private and personal ends. Neither can it be said that his use of the truck on the occasion had no connection with his master's business. In the first place he was directed by Crossgrove to take the truck on the trip during which the injury was inflicted. Crossgrove was in charge of the work and Pettit was acting under his direction. It was as much his duty to observe the order of Crossgrove as if it had been given by the defendant himself. The authority to take the truck was not given wholly for the convenience and personal benefit of Pettit, but he was directed to take it in order to expedite the work at the fairgrounds. The direction was given and the truck used not only upon an express order but also in order that there might be an earlier return to defendant's service and in furtherance of his interests. It therefore had a close connection with the defendant's business and was done to facilitate the work of setting up the exhibit. True, it was in part to accommodate the servant but the truck was taken and used in part at least for the accommodation of the defendant and the promotion of his business. Defendant cites and relies on *Steffen v. McNaughton,* 142 Wis. 49. The action was brought to recover for injuries negligently inflicted by a chauffeur, while driving the car of his employer to his home to get dinner, carelessly colliding with and injuring a pedestrian at a street crossing. Under his employment the chauffeur was to provide his own meals and usually walked to his home to get dinner. He was employed to care for and operate the car under the direction of the owner or any member of his family. In going to his dinner he took the car without the permission of the owner and while he had used it for that purpose on other occasions, it had always been done without the knowledge or consent of the owner. It was contended that as

the chauffeur had been given general control of the car and as the use he made of it tended to reduce the time necessary to get his dinner and to that extent facilitated his labor for the owner, he should be regarded as having acted within the scope of his employment and that the owner was liable for his negligent act. This contention was rejected on the ground that the owner never by words, act or conduct gave the chauffeur permission to use the car for the purpose named, that he was not only using it at the time without consent but for his own private purpose and during a period when the relation of master and servant was suspended. The court held that there was nothing in the evidence to warrant the inference that the car was used to shorten the time taken for the midday meal or to facilitate the owner's business. The opinion indicates that if the car had been used by the chauffeur to go to his dinner as an aid to an early return to labor or in obedience to an order of the owner, or a member of his family, or had been done with their implied consent, a different result would have been reached. The instant case is distinguished from that one because here the servant was acting in obedience to an express direction and in furtherance of the defendant's business. The law relating to a master's liability is embodied in the following brief and comprehensive statement:

"For all acts done by a servant in obedience to the express orders or directions of the master, or in the execution of the master's business, within the scope of his employment, and for acts in any sense warranted by the express or implied authority conferred upon him, considering the nature of the services required, the instructions given, and the circumstances under which the act is done, the master is responsible." (*Ritchie v. Waller*, 63 Conn. 155, 160.)

The sixth instruction of which complaint is made is in accord with the views stated and fairly presented the questions of fact to the jury. Attention is also called to the seventh instruction wherein the court told the jury that, "if the young man was using this truck in his own private matter, of his own volition, to go to his dinner, I think perhaps Mr. Ericksen would not be responsible. If, however, his immediate superior that day, Mr. Crossgrove, directed him to take that truck and use it to go to his dinner in order that he might get back to his work sooner, then its use would be right in line with his em-

ployment and if he was negligent while using the truck under such directions Mr. Eriksen would be responsible for the negligence of the young man." There is reason to criticize the use of the word "perhaps" where the court referred to the defendant's lack of responsibility if Pettit was using the truck for his own private purposes. A more positive statement should have been made, but in other parts of the charge the court distinctly stated that the defendant would not be liable for the negligence of Pettit if the latter took and used the truck without permission for his own purposes. It was made plain to the jury that, if he was directed to take the truck in order to get his dinner so that he might return to his work earlier and in that way further the business of the defendant, the latter would be responsible. It is clear that there could have been no prejudice by the use of the objectionable word. It appears beyond cavil that Crossgrove was the immediate superior of Pettit and there was no error in the statement to that effect by the court.

Other criticisms are made of the instructions, but we find nothing substantial in them.

An attack is made on the action of the court in reforming and explaining twenty-nine special questions that were presented for submission to the jury. Some of these were stricken out because they were repetitions and others because they were not proper or material. Some that involved several propositions were properly subdivided and reformed so that each should relate to a single ultimate fact. The most complaint is made of the action of the court in explaining the questions to the jury. As an example of the action taken, the first question asked was: "In what capacity was Vernon Pettit employed by the defendant, Eriksen, on the day of the injury?" As to that the court said: "Well, the undisputed evidence, gentlemen, that day he was employed as an assistant to Mr. Crossgrove. Nobody disputes that. He was helping Mr. Crossgrove." The second question was: "At the time of the accident and the injury to the plaintiff, was said Vernon Pettit engaged in the business of Eriksen?" The court stated: "Now, that's at the time of the accident down here on the street. Well, I told you that, gentlemen. If he was pursuing his own business, he would not be. If he was acting under

the directions of Mr. Crossgrove, who had been assigned to that particular business, then he was in the employ of Mr. Eriksen, engaged in his business at that time." Other questions involving the same inquiry in different forms were given a like explanation. One question was: "Did the defendant Eriksen know that said Vernon Pettit was driving said truck before the accident happened?" As to that the court remarked: "I think there is no question about that, that he did not know." The question: "What items of damages do you allow plaintiff and the amounts thereof?" was reformed and divided into five questions, asking how much was allowed on each separate element of the damages claimed, the court stating that it was not suggesting that anything be allowed for any of them and leaving the matter of allowance wholly to the jury. There can be no good ground of complaint of the action of the court in shaping and making definite the special questions submitted. No question should be submitted except those which can be fairly and definitely answered, and so far as practicable they should be so framed as to admit of categorical answers. It is the function and duty of the court to shape and supervise the questions, eliminating those that may be immaterial and submitting only inquiries as to ultimate facts on controverted issues. (*Mo. Pac. Rly. Co. v. Holley*, 30 Kan. 465, 1 Pac. 130, 554; *Evans v. Moseley*, 84 Kan. 322, 114 Pac. 374.) The explanation of the special questions and the comments on them, although an unusual practice, is not one to be condemned unless the court in some way invades the province of the jury. Here the comments of the court were in the nature of instructions and may be regarded as an addition to its general charge. It is proper for the court to aid the jury by pointing out the vital issues and the material questions in the case, stating the rules of law applicable to them, but of course it should be careful to avoid any expression of opinion as to controverted facts. The answers to be returned should not be indicated by the court and while several answers were suggested here they related to matters that were not in fact in dispute and such inquiries might well have been rejected from the list of questions submitted. While the court explained the special questions at considerable length and commented freely on them, it was manifestly done with a view of

Snyder v. Eriksen.

aiding the jury to understand the questions. We think the court did not intimate to the jurors its own opinion on the disputed facts nor trench on the functions of the jury. There was no attempt to color or control their findings on disputed issues and we think no prejudicial error resulted from the action taken.

After the jury returned their answers, the court examined them and, finding some of them to be indefinite and incomplete, required the jury to retire and make more explicit and complete answers. To the fourth question: "At the time of the accident and injury to plaintiff, was said Vernon Pettit, the agent, servant or employee of Eriksen for the purpose of running and operating said truck?" the answer first returned was: "Under orders." The answer finally returned was: "Yes." In answer to question ten: "Was the injury of plaintiff caused by an unavoidable accident?" the first answer was: "Yes, by a capable driver." This was an obvious misunderstanding of the question. The court after reminding them that an unavoidable accident was one where no one was to blame, gave them an opportunity to make a correction of an error which the jury readily recognized and the answer was changed to "No." To the question: "Had Crossgrove any authority from Eriksen to employ Pettit to run or operate said truck or to allow him to use it?" the answer was: "No testimony as to that." Their attention was drawn to the misconception and inconsistency, by the court, and after calling their attention to the declaration of law that had been made respecting the relationship between the defendant, Crossgrove and Pettit, the jury changed the answer to "Yes."

Where special findings are indefinite and incomplete or there has been a manifest misunderstanding of questions asked, it is proper and indeed it is the duty of the court to require the jury to make more definite answers or to correct answers where there has been obvious misinterpretation of the questions. It is not proper for the court to change findings understandingly made, merely to make them consistent with the general verdict. It has been determined to be the duty of the court upon motion of either party to require the jury to make their answers responsive to the questions asked

21—109 KAN.

and where they are indefinite or incomplete, to make them definite and complete. (*Francis v. Brock*, 80 Kan. 100, 102 Pac. 472; *Garvin v. Garvin*, 87 Kan. 97, 123 Pac. 717; *Stewart v. Produce Co.*, 88 Kan. 521, 129 Pac. 181.) That which may be done in this respect upon the motion of a party may certainly be done on the court's own motion, in order to avoid an abortive result.

At the close of defendant's evidence the court on the application of plaintiff permitted her to amend her petition so as to allege in more detail that the truck was driven in violation of an ordinance of the city, which was produced. The original petition had alleged in general terms that it 'had been driven in violation of the laws of the state and the ordinances of the city. No error was committed in allowing the amendment.

In view of the evidence as to the extent of the injuries the claim that the damages awarded ($500) is excessive, cannot be sustained. While the injuries are not permanent in their nature, the extent of the injuries and the suffering that resulted from them leads us to think that the award is not unreasonable.

The judgment is affirmed.