ALICE WALSH vs. ISRAEL A. FEINSTEIN & another.

MICHAEL WALSH vs. SAME.

Suffolk.    November 13, 1924. — January 29, 1925.

Present: RUGG, C.J., BRALEY, PIERCE, CARROLL, & WAIT, JJ.

*Negligence*, In use of highway, Contributory.    *Agency*, Scope of authority.
   *Witness*, Cross-examination, Adverse party.    *Practice, Civil*, Exceptions.

At the trial of an action of tort for personal injuries caused to the plaintiff,
   a girl fifteen years of age, when she was run into by a motor truck, there
   was evidence tending to show that the plaintiff, in crossing a street on
   which ran double street car tracks, passed behind a street car standing
   on the track nearer her, looked to her right, and saw the truck about
   twenty-five feet distant approaching at the rate of eight miles per hour
   on the other street car track; that the truck slowed down and almost
   stopped, and that the plaintiff then started to cross the second track;
   that the truck then lurched forward and she was struck.    *Held*, that the
   jury might have inferred that the plaintiff had reason to think that the
   truck was slowed down by its driver for the purpose of giving her an
   opportunity to cross in safety, and could find therefrom that she had
   acted with reasonable prudence.
The driver of the motor truck which caused the accident above described
   had been employed by the defendant for about six months, working
   from eight in the morning to six in the evening with no usual dinner
   hour but with instructions from the defendant to use the automobile
   when going to dinner.    On the occasion of the accident, he was on his
   way to get his dinner at his mother's home in the vicinity of a place to
   which he had been sent on an errand but which he had found closed
   during the men's lunch hour.    *Held*, that a finding was warranted that
   the driver was acting within the scope of his employment at the time
   of the accident.
It was within the discretion of the trial judge to permit the defendant in
   the above described action, when called as a witness for the plaintiff,
   to be asked by the plaintiff what he said to the driver of the motor truck
   when the driver told him of his striking the plaintiff when on his way to
   dinner, and to admit the answer to the question, "I asked him if the
   girl had been badly hurt and he said, 'No, he didn't think so.'    I said,
   'Well, if she wasn't badly hurt there is nothing to worry about.'    And
   I might have said that, 'There is nothing to worry about if she isn't
   badly hurt.'"
No legal harm resulted to the defendant from an answer by the driver,
   "He may have," to a question by the plaintiff as to whether the defend-
   ant said "those words to you [referring to the answer of the defendant
   above quoted] when you went back and told him how the accident
   happened."

Two ACTIONS OF TORT, the first for personal injuries suffered when the plaintiff, a minor, was run into by a motor truck alleged to have been operated by an employee of the defendant, and the second action by the father of the plaintiff in the first action for consequential damages. Writs dated October 4, 1920.

In the Superior Court, the actions were tried together before *Fosdick*, J. Material evidence is described in the opinion. At the close of the evidence, the defendants moved for verdicts in their favor. The motions were denied. There was a verdict for the plaintiff in the first action in the sum of $4,500 and for the plaintiff in the second action in the sum of $175. The defendants alleged exceptions.

*W. B. Downey*, for the defendants.

*W. B. Keenan*, (*S. L. Solomont* with him,) for the plaintiffs.

PIERCE, J. These are two actions of tort arising as the result of personal injuries received by the plaintiff Alice Walsh, a minor, when an automobile truck of the defendants came in contact with her on Broadway, South Boston, on January 19, 1920. The cases were tried together in the Superior Court and resulted in verdicts for both plaintiffs. At the close of the evidence, the defendants moved for directed verdicts, and the case is before this court on the refusal of the presiding judge so to order.

The defendants contend that the verdicts should have been directed because (1) " Stafford, the defendants' chauffeur, was not acting within the scope of his employment at the time of the accident "; and (2) " Plaintiff, Alice Walsh, was not in the exercise of due care." The defendants do not formally or inferentially contend that the chauffeur was not negligent.

The evidence in its aspect most favorable to the plaintiffs, upon the issue of the due care of Alice Walsh, warranted a finding of the facts which follow. Shortly before one o'clock on the afternoon of the day of her injury, Alice Walsh, about fifteen years of age, accompanied by her mother, was waiting in front of a drug store at the corner of C Street and West Broadway, South Boston, for a trolley car bound for Boston. The car finally arrived and stopped about ten feet on the

Boston side of the cross walk, where the plaintiff and her mother were standing. The daughter left her mother on the corner to await her return while she went back across West Broadway to her house to get some money which her mother had forgotten to bring with her. Walking on the cross walk she passed the rear end of the trolley car, over the rails of the inbound track on which it was running, stopped there and looked toward Boston; she saw an automobile truck coming toward her on the other track, at the rate of eight miles an hour and distant twenty-five feet. As she watched the truck it slowed down quite a bit and almost stopped; then she started to cross the rails of the further track, and then before she had crossed, the truck lurched forward and struck her with the right mudguard. On the foregoing facts, the jury properly could find as an inference of fact that the plaintiff had reason to think that the truck was slowed down by its driver for the purpose of giving her an opportunity to cross in safety, and could find therefrom that she had acted with reasonable prudence.

The evidence on the issue, whether the defendants' chauffeur was acting within the scope of his employment at the time of the injury, warranted a finding of the facts which follow. The driver of the truck, one Stafford, at the time of the accident was and had been for more than six months in the employment of the defendants, as a chauffeur in charge of trucks. His hours of work were from eight in the morning until six at night and he had no usual dinner hour. His instructions were to use the automobile when he was going to his dinner. On the day of the accident he was instructed to go to South Boston and get some goods at the Standard Supply Company. When he got to the place the men " were on their lunch hour and the place was closed." He then started to drive to his mother's house, three fourths of a mile beyond, to get his dinner, and was then going back to the Standard Supply Company to get the goods. The accident happened before he reached his mother's house. The jury on the evidence was warranted in making the specific finding that Stafford on that particular day was instructed to use the car to go to his dinner, and in further

finding that the use of the car was for the financial gain of the employer and not for the mere convenience or pleasure of the driver. The evidence was ample that the instructions to use the automobile to go to dinner were authorized and approved by the defendants. The case is governed by *Reynolds* v. *Denholm*, 213 Mass. 576, and *McKeever* v. *Ratcliffe*, 218 Mass. 17, and not by *Hartnett* v. *Gryzmish*, 218 Mass. 258.

The defendant Samuels, called to testify by the plaintiffs, in response to questions put to him by the plaintiff, in substance testified that he heard from the chauffeur that he was on his way to dinner the day the accident happened. Samuels was then asked, " What did he say to you? " and replied, " He told me he had gone to South Boston to get some goods of mine and when he got to the place it was somewhere around noon hour and the fellows who were going to give him the goods weren't there so he thought he would run over to his house to lunch, because he lived in South Boston. I don't remember whether he said it was on his way to lunch or on the way back that this accident happened." Subject to the exception of the defendant, Samuels was then asked, " What did you say to him when he told you that? " and replied thereto " I asked him if the girl had been badly hurt and he said, ' No, he didn't think so.' I said, ' Well, if she wasn't badly hurt there is nothing to worry about.' And I might have said that, ' There is nothing to worry about if she isn't badly hurt.' " G. L. c. 233, § 22, provides: " A party who calls the adverse party as a witness shall be allowed to cross-examine him." *Emerson* v. *Wark*, 185 Mass. 427. *Anderson* v. *Middlebrook*, 202 Mass. 506. The extent of a cross-examination rests largely in the discretion of the trial judge. *Perkins* v. *Adams*, 5 Met. 44, 48. *Hathaway* v. *Crocker*, 7 Met. 262, 266. Here there is no evidence of an abuse of that discretion. Moreover, the mental reaction of Samuels when he heard the story and received the reply to his question was relevant in proof that the chauffeur was actually in the performance of his duty to the defendants when he drove the automobile against the plaintiff. *McKeever* v. *Ratcliffe, supra.*

No legal harm resulted to the defendants through the answer of Stafford, " He may have," to the question, " Did Mr. Samuels say those words to you [reading the answer of Samuels to the plaintiff, above quoted] when you went back and told him how the accident happened? "   As proof that Samuels did make the statement testified to by him, the answer of Stafford is manifestly of no probative value.

We find no error in the conduct of the trial or in the refusal to rule as the defendants requested.

*Exceptions overruled.*