CHARLES H. CLARK, Appellant, v. M. FELDMAN, Respondent.

(224 N. W. 167.)

Opinion filed February 15, 1929. Rehearing denied March 23, 1929.

*J. C. Adamson* and *Francis Murphy,* for appellant.

*F. T. Cuthbert,* for respondent.

BIRDZELL, J. This is action to recover damages alleged to have been sustained by the plaintiff through the negligence of a servant of the defendant in driving the defendant's delivery truck upon and over the plaintiff as he was crossing the street in the city of Devils Lake. From a judgment in favor of the defendant entered on the verdict of a jury

and from an order denying the plaintiff's motion for a new trial, the plaintiff appeals to this court.

The salient facts are: That on the morning of July 30, 1927, between 8:00 and 9:00 A. M., the plaintiff Clark, a man nearly eighty years of age, walked down the east side of Fourth avenue, in Devils Lake. At the intersection of Fourth avenue and Fourth street, he turned to the right to cross the avenue. As he was crossing toward the west, the defendant's delivery truck, being operated at the time by one Melhouse, came upon him, struck and seriously injured him. The plaintiff's eyesight was good and he testified that he looked but saw no car coming. There was no obstruction in the street or nothing, so far as the record shows, to interfere with the vision of the driver of the truck. He testified that he was driving not over twelve miles an hour; that as he approached the intersection of Fourth street and Fourth avenue he saw the plaintiff standing by the lamp post at the curb and a little north of the intersection; that as he was driving up the avenue the left wheel of the car was about the center of the street; that he next saw the plaintiff right beside the car and a little bit north of the pedestrian's lane marked upon the pavement at the intersection. Clark was about three feet from the car when the witness observed him and had he stopped he would not have been struck. The witness applied the foot brakes as quickly as he could, stopping the car within about twenty feet, or, as he explained later, within twenty feet of the north line of the pedestrian's lane. From these facts alone there can be no question in our judgment but that the questions of negligence and contributory negligence were for the jury. It is needless to recite the testimony as to the circumstances of the collision.

It appeared that Melhouse had been employed by the defendant for several weeks before this time to operate the truck in question for the purpose of delivering groceries; that he was in the employ of the defendant at the time; that the defendant was not in town on the morning of the accident; that Melhouse had gone to the store that morning, which was located about a block north and half a block west of the place where the collision occurred and, after having done some work about the store, took the truck, drove to the depot in the south part of the city, for the purpose, according to his testimony, of mailing

some letters of his own on the morning train and that the collision occurred as he was on his way back to the store.

There are a number of errors assigned and argued in the brief which, in the view we take of the case, it will be unnecessary for us to consider. We shall consider only the exceptions to the charge. In charging the jury on the question of contributory negligence, the court, after defining negligence, said:

"So, in this case, to make the defendant liable it must appear that the plaintiff was using ordinary care and diligence, but it must also appear from a fair preponderance of the evidence that Melhouse was negligent in the operating of that automobile on the street at that time; that is, that he did'nt use ordinary care in running that automobile. In order that Mr. Clark recover in this lawsuit, it must appear not only that Melhouse was acting in the course of his employment, and that he was negligent and careless, but that Mr. Clark was himself free from negligence and carelessness. If you find that Melhouse was acting in the course of his employment, if you find that he was negligent in operating that automobile, and that that negligence brought about or helped to bring about that accident and the injury to Mr. Clark, then you should pass to the question of whether or not Mr. Clark himself, under all of the circumstances, was negligent or careless; and in passing upon that question, have reference to all of the evidence that may apply to that matter or may throw light into your minds as reasonable men. If you find, Gentlemen of the Jury, that Melhouse was negligent, but, on the other hand, you find that Clark was also negligent, and that his negligence or carelessness brought about or helped to bring about his injury, then he cannot recover in this lawsuit. If he was negligent or careless and that negligence or carelessness had anything to do with bringing about his injuries, then Mr. Clark cannot recover. That would be true no difference how negligent or how careless Mr. Melhouse was in the operation of that automobile."

After the jury had been considering the case for some time they returned to the court room, whereupon the foreman announced that there was a difference of understanding concerning the charge, that they could not agree as to the part wherein the court had said that if there was negligence on the part of both parties the verdict should be for the defendant. Thereupon the court said:

"Well, I say to you, Gentlemen of the Jury, in that respect that I first said to you that the case was bottomed on negligence; that is, that if it was just a mere accident without negligence or carelessness of Melhouse, then Feldman would not be liable. That if you found that Melhouse was negligent, careless, guilty of a lack of ordinary care, and that you also found that Mr. Clark had been negligent or careless on his part, and his carelessness or negligence had brought about or helped in some way to bring about his injury, then he could not recover, even though Melhouse was negligent. In other words, under the law, a man who is himself negligent or careless and his negligence or carelessness results in his injuries, he can't recover damages no matter how negligent the person was who injured him. His negligence doesn't have to be the entire cause of the trouble, but if the plaintiff's negligence has any part in bringing about the injuries, he is said to have contributed or helped to bring about the injuries, and is therefore guilty of contributory negligence, that is, negligence or carelessness that contributed to or helped to bring about the injury, and therefore he cannot recover. So, if in this case you find that Melhouse was negligent, and also find that Mr. Clark was negligent, and that his negligence helped to bring about or brought about, or assisted in bringing about his injury, then Mr. Clark cannot recover. Does that answer your question, Gentlemen of the Jury? Now, in this connection you will have reference to the whole charge, not to just a little piece of it."

It appears that, in speaking of negligence, the court had merely charged that a person who drives a motor vehicle upon a highway carelessly and heedlessly, in willful and wanton disregard of the safety of others or without due caution and at a speed or in a manner so as to be likely to endanger any person, is guilty of negligence. There was in the charge no statement of the duty of a driver of an automobile in approaching a crossing used by pedestrians to be on the lookout for persons crossing the street and to yield them the right of way. Chapter 162, Session Laws of 1927, § 18, ¶ c. Neither was there any statement as to the right of a pedestrian, as defined by statute, in crossing a street at an intersection or along the prolongation of the lateral boundary lines of the adjacent sidewalk at the end of a block.

Chapter 162 of the Laws of 1927, § 18, ¶ c, reads:

"The driver of any vehicle upon a highway within a business or

residence district shall yield the right of way to a pedestrian crossing such highway within any clearly marked crosswalk or any regular pedestrian crossing included in the prolongation of the lateral boundary lines of the adjacent sidewalk at the end of a block, except at intersections where the movement of traffic is being regulated by traffic officers or traffic direction devices. Every pedestrian crossing a highway within a business or residence district at any point other than a pedestrian crossing, crosswalk or intersection shall yield the right of way to vehicles upon the highway."

The plaintiff had made several requests for charges. Regardless of whether these requests should have been given in the form in which they were embodied, they were sufficient to call the attention of the court to the relative rights and duties of the parties at the intersection; that is, they called attention to the duty of the driver to look out for pedestrians and reflected the standard of care required of the latter for their own safety. We are of the opinion that a general instruction on the subjects of negligence and contributory negligence, without a further instruction defining the rights of the parties as they existed under the law then and now in force, as above quoted, was prejudicial in that such instruction did not give to the jury an adequate basis upon which to determine the reasonableness of the conduct of the parties affected. It will be noted that it was upon this very subject that the jury was unable to reach a common understanding of the charge, as appears by the inquiry addressed to the court after they had been considering the case for some time; hence, the necessity for defining the rights and duties of the parties. It is said, 1 Blashfield's Cyclopedia of Automobile Law, § 9, pp. 291–293:

"At crossings, all drivers, particularly of motor vehicles, must be vigilant in looking for traffic on the intersecting street and maintain such control that on the shortest possible notice they can stop their cars so as to prevent danger to pedestrians. The fact that on a bright day the driver of an automobile approaching a crossing does not see a pedestrian crossing the street, and who is in plain sight from the time of his leaving the curb until the driver is within 8 feet of the pedestrian, tends to show lack of watchfulness on his part.

"Under some ordinances a pedestrian is expressly given the right

of way at street intersections, and, although it may be difficult to lay down any fixed rule showing just what rights and privileges this right of way may give pedestrians or take from the drivers of automobiles, it at least puts the necessity of continuous observation on the driver of the automobile when approaching the crossing. And a motorist who runs down a pedestrian passing along a street at a crossing where the latter has the right of way, with sufficient light to be seen by proper observation, is prima facie negligent, although he does not see the pedestrian."

Section 11, p. 294, reads as follows:

"The duty of a motorist to look out for pedestrians applies, not only to those who are vigilant in observing traffic conditions, but also to pedestrians who may fail to observe every approaching car."

On the other hand, it is said in Berry, Auto. 6th ed. § 357:

"An ordinance giving pedestrians the right of way over crossings at street intersections in no wise impairs the duty of pedestrians to exercise ordinary care to avoid collisions with vehicles. It means no more than that, when two or more persons moving in different directions approach a crossing at the same time or in such manner that if both or all continue their respective courses there is danger of collision, then the one having the preference is entitled to the first use of such crossing, and it is the duty of others to give him reasonable opportunity to do so." Rolfs v. Mullins, 179 Iowa, 1223, 162 N. W. 783.

In another expression, quoted by the same author from Merrifield v. C. Hoffberger Co. 147 Md. 134, 127 Atl. 503, the right of way given to a pedestrian at an intersection is said to mean "that if, while proceeding, his course and that of defendant's truck would bring them in contact at a given point in pedestrian's way, he was not required to stop or diverge from his course so as to give the truck the right of way, but on the contrary, under such conditions, it was the duty of the driver of the truck to stop or diverge so as to give him the right of way, and the appellant had the right to assume that this course would be followed by the driver of the truck, not alone because the consequence resulting from a failure of the driver of the truck to do this would be extremely serious, but for the further and controlling reason that the statute required the driver to do so."

In Johnson v. Johnson, 85 Wash. 18, 147 Pac. 649, it is said:

"If the conceded right of way means anything at all, it puts the necessity of continuous observation . . . upon the driver of the automobile when approaching a crossing just as the necessity of the case puts the same higher degree of care upon the pedestrian at other places than at crossings." See Pederson v. O'Rourke, 54 N. D. 428, 209 N. W. 798; Olsen v. Peerless Laundry, 111 Wash. 660, 191 Pac. 756; Jurisch v. Puget Transp. Co. 144 Wash. 409, 258 Pac. 39.

The evidence in this case does not indicate with any degree of certainty whether the plaintiff was crossing the highway "within any clearly marked crosswalk or any regular pedestrian crossing included in the prolongation of the lateral boundary lines of the adjacent sidewalk at the end of a block," so as to give him the right of way within the statute above quoted. If he was not in a place where it was the driver's duty to yield the right of way under the statute and was crossing between intersections, it was his duty to yield the right of way to the driver. But, in any event, the questions of negligence and contributory negligence must be determined with reference to the standards of conduct prescribed by law. Since the statute makes the relative rights of the parties at intersections to depend upon the position of the pedestrian and since the reasonableness of the conduct of the parties can only be judged in light of the rights given and the reciprocal duties imposed, if they are to be made effective, an instruction that does not take the statute into consideration is erroneous and misleading. It may be added that this statute had been in effect only thirty days when the accident occurred and the record does not show that it was specifically brought to the attention of the trial court. Nevertheless, the rules invoked in some of the requests for charges were, in substance, made applicable by the statute. Jurisch v. Puget Transp. Co. supra; Russell v. Vergason, 95 Conn. 431, 111 Atl. 625.

We are of the opinion that the charge in question was further prejudicial to the plaintiff in that, in stating the effect of his contributory negligence, if any, it practically omitted the element of proximate cause. The jury was told that no matter how negligent or careless Melhouse might have been in driving the truck, if the plaintiff was guilty of any negligence which had anything to do with bringing about his injuries, he could not recover. The jury might well have considered that the plaintiff was negligent in failing to observe the car coming

before he left the curb to cross the street and that it was their duty under the instructions to find for the defendant on this account even though such negligence might have been but the indirect cause of the plaintiff's injuries. The books are filled with cases where recoveries have been permitted on account of injuries to pedestrians who failed to look for approaching automobiles as they started to cross at intersections. See Berry, Auto. 6th ed. §§ 344–346. Yet there can be no doubt that a failure to look may be found to. constitute negligence as a matter of fact, some of the cases even going to the extent of holding that it may bar recovery as a matter of law. See Knapp v. Barrett, 216 N. Y. 226, 110 N. E. 428. Hence, it is especially important that the element of proximate cause be clearly embraced in an instruction on contributory negligence where the facts are such as the record here indicates. The rule is "that whenever the plaintiff's case shows any want of ordinary care under the circumstances, even the slightest, contributing in any degree, even the smallest, *as a proximate cause* of the injury for which he brings his action, his right to recover is thereby destroyed." Beach, Contrib. Neg. 3d ed. § 35. Or, as stated by Shearman & Redfield on the Law of Negligence, 6th ed. § 94, "The plaintiff's fault does not affect his right of action, unless it *proximately* contributed to his injury. It must be a proximate cause, in the same sense in which the defendant's negligence must have been a proximate cause in order to give any right of action. It is, of course, not correct to say that negligence which does not occur at the time of the injury necessarily does not proximately contribute thereto. Great difficulties arise in charging juries upon this point. No jury could ever understand what 'proximate' means. In most reported cases, it has been held permissible to say that the plaintiff's negligence is no defence, unless it directly contributes to the injury; . . ." But the author goes on to indicate that such a definition of "proximate" in an instruction is not tolerated in New York and perhaps not in Georgia. We appreciate the difficulty which has been experienced by courts in applying the law with reference to negligence and contributory negligence since Baron Parke's announcement in the famous case of Davies v. Mann, 10 Mees. & W. 547, 152 Eng. Reprint, 588, 19 Eng. Rul. Cas. 190, wherein he said (page 549):

"Here it is otherwise; and the judge simply told the jury, that the

mere fact of negligence on the part of the plaintiff in leaving his donkey on the public highway, was no answer to the action, unless the donkey's being there was the immediate cause of the injury; and that, if they were of opinion that it was caused by the fault of the defendant's servant in driving too fast, or, which is the same thing, at a smartish pace, the mere fact of putting the ass upon the road would not bar the plaintiff of his action. All that is perfectly correct; for, although the ass may have been wrongfully there, still the defendant was bound to go along the road at such a pace as would be likely to prevent mischief.''

This case doubtless states the rule too broadly (see Beach, Contrib. Neg. 3d ed. §§ 11, 30; Shearm. & Redf. Neg. 6th ed. § 99), but numerous cases have since arisen in which a defendant has been held liable for injuries sustained by a party who has himself been negligent. Recoveries are supported according to the doctrine of discovered peril or last clear chance on the theory that the defendant, by the exercise of reasonable care, had an opportunity to avoid injuring the other party; likewise, upon the theory that the negligence of such other party had so far ceased to be operative as not to be considered in law as a proximate cause. In such situations the concurrence of the negligence of the injured party with that of the defendant down to the time of the injury is an important consideration, but only in determining the ultimate question of proximate cause. Upon analysis we think the soundness of the decisions involving such questions, in cases where pedestrians have been injured in collisions with automobiles, may be tested by the query as to whether or not the plaintiff's negligence at the time of the accident may properly be said to have been a proximate cause of the injuries, or whether, notwithstanding his negligence, the injuries would not have occurred but for the neglect of some duty owing to him by the defendant at the time, the neglect of which under the circumstances is considered in law as *the* proximate cause of the injuries.

The following cases may be taken as illustrative of situations in which a pedestrian may recover either notwithstanding his own negligence, or on the theory that he was not negligent in assuming that the driver would exercise a proper degree of care for his protection: Russell v. Vergason, 95 Conn. 431, 111 Atl. 625; Smith v. Spirek, 196

Iowa, 1328, 195 N. W. 736; Rowe v. Hammond, 172 Mo. App. 203, 157 S. W. 880; Aronson v. Ricker, 185 Mo. App. 528, 172 S. W. 641; Wittenberg v. Hyatt's Supply Co. — Mo. App. —, 219 S. W. 686; Smith v. Ozark Water Mills Co. 215 Mo. App. 129, 238 S. W. 573; Andrews v. Parker, — Mo. App. —, 259 S. W. 807; Lyons v. Volz, — N. J. L. —, 114 Atl. 318; Virgilio v. Walker, 254 Pa. 241, 98 Atl. 815; Stephenson v. Parton, 89 Wash. 653, 155 Pac. 147; Olsen v. Peerless Laundry Co. 111 Wash. 660, 191 Pac. 756; Jurisch v. Puget Transp. Co. 144 Wash. 409, 258 Pac. 39; Standard Oil Co. v. McDaniel, 52 App. D. C. 19, 280 Fed. 993.

In view of another trial we deem it proper to comment briefly upon that part of the charge which deals with the question as to whether or not Melhouse was acting in the course of his employment at the time the injuries were sustained by the plaintiff. Without reproducing here that portion of the charge, we would call attention to the fact that it assumes it was the duty of the jury to accept the undisputed testimony of Melhouse, the defendant's employee, as to the nature of the errand upon which he said he was engaged at the time of the collision, and this, whether or not such evidence was in any way corroborated. The law is that the burden of proof is on the plaintiff to show that the operator of the car was the agent or servant and that he was acting within the scope of his employment (Berry, Auto. 6th ed. § 1340); but, quoting Berry on Automobiles, 6th ed. § 1352, "where a servant, who is employed for the special purpose of operating an automobile for the master, is found operating it in the manner such machines are usually operated, the presumption arises that he is running it in the master's service;" (Huddy, Auto. 8th ed. § 795), and this presumption is not conclusively rebutted by affirmative testimony from an interested source which would go to show that the employee was upon an errand of his own. Here there is evidence not only that Melhouse was employed for the purpose of delivering groceries with this truck, but it appeared that he was driving it upon the streets of the city where he would have occasion to use it and during the hours when he would be so using it about his employer's business. The employer was not at his place of business nor in town. The record contains no conclusive evidence to negative an implied assent to the employee's use of the automobile upon a personal errand, if he did so use it, for the purpose of saving

time, thus advancing thereby his employer's interest. While the authorities are divided, we think the weight of authority supports the submission to the jury of the question as to whether the employee was engaged in the course of his employment under facts such as are present in the instant case, notwithstanding the denial of the employee that he was so engaged. See Dierks v. Newsom, 49 Cal. App. 789, 194 Pac. 518; Ward v. Teller Reservoir & Irrig. Co. 60 Colo. 47, 153 Pac. 219; Orris v. Tolerton & 'W. Co. 201 Iowa, 1344, 207 N. W. 365; Snyder v. Eriksen, 109 Kan. 314, 198 Pac. 1080; Hausam v. Poehler, 120 Kan. 119, 242 Pac. 449; Walsh v. Feinstein, 251 Mass. 109, 146 N. E. 355; Behrens v. Hawkeye Oil Co. 151 Minn. 478, 187 N. W. 605; Barz v. Fleischmann Yeast Co. 308 Mo. 288, 271 S. W. 361; Chambers v. Kennedy, — Mo. —, 274 S. W. 726; Schultze v. McGuire, 241 N. Y. 460, 150 N. E. 516; Stumpf v. Montgomery, 101 Okla. 257, 32 A.L.R. 1490, 226 Pac. 65; Doherty v. Hazelwood Co. 90 Or. 475, 175 Pac. 849, 177 Pac. 432; Holzheimer v. Lit Bros. 262 Pa. 150, 105 Atl. 73; Zondler v. Foster Mfg. & Supply Co. 277 Pa. 98, 120 Atl. 705; Sieber v. Russ Bros. Ice Cream Co. 276 Pa. 340, 120 Atl. 272; Moore v. Roddie, 103 Wash. 386, 174 Pac. 648; Vernarelli v. Sweikert, 123 Wash. 694, 213 Pac. 482; Huddy, Auto. 8th ed. § 796; 2 Blashfield, Cyc. of Auto. Law, chap. 69, § 46.

Under the evidence the jury should not have been charged that there would have been no liability, as a matter of law, had the collision occurred while Melhouse was on the way to the depot. The accident did not occur at that time and the question is whether he was engaged in the course of his employment at the time it did occur. If Melhouse's testimony is believed by the jury and if he was not using the truck at the time in order to expedite the business of his employer, his personal errand would not have been finished until he returned to the store. There would be no basis for applying the rule adhered to in Kohlman v. Hyland, 54 N. D. 710, 50 A.L.R. 1437, 210 N. W. 643, 56 N. D. 772, 219 N. W. 228, where the employee, after his personal detour, had proceeded a long distance in the direction required by the employer's business, though on another route, before the collision occurred.

Judgment reversed and new trial granted.

BURKE, Ch. J., and CHRISTIANSON, NUESSLE, and BURR, JJ., concur.

## On Petition for Rehearing.

BIRDZELL, J. In a petition for rehearing counsel for the respondent suggests that a rehearing should be had because the case has been decided on matters that were not raised in the briefs or argued at the hearing or even presented to the trial court. Reference to the opinion will disclose that the main questions considered arise out of the exceptions taken by the plaintiff to the charge of the jury. We did not discuss all of the objections to the charge that were argued by the appellant's counsel, but we did consider those bearing upon the questions of negligence and contributory negligence. The charge given on these matters is quite fully quoted and the circumstances in which it was later supplemented by the court are fully stated. The record before this court shows that the charge was excepted to; that the exceptions were embodied in a motion for a new trial and made a ground of the motion. They are argued both in the brief and supplemental brief of the appellant filed in this court. A portion of the argument is addressed to the question that the court erred in denying the specific requests for instructions that were presented by the plaintiff. This court did not agree with that contention, but it did consider whether or not the charge as given sufficiently defined, for the benefit of the jury, the standards of conduct which the law recognizes as reasonable or unreasonable under the general circumstances shown by the evidence. Further than that, the plaintiff's motion for a new trial, his assignments of error and his brief on appeal advance specifically the contention that the charge was erroneous in that it failed to distinguish between contributory negligence as a proximate cause of an injury to the plaintiff and contributory negligence which might have been a remote cause. In this state of the record it is difficult to see how it can be asserted that a decision which is based principally on these grounds is based upon matters that were not stated in the briefs or argued at the hearing or presented to the trial court. It is true, however, and this may afford a partial explanation for counsel's statement, that the reasoning upon which the opinion is based does not follow closely that

advanced by the appellant, and the statute together with a considerable number of additional authorities are cited. The questions of law, however, are not raised for the first time in this court.

As we read the petition there are two fundamental contentions: First, that on the whole evidence the defendant was entitled to a directed verdict and hence that any error in the instructions, such as are dealt with in the opinion, are immaterial; and second, that the instructions embody a correct statement of the law. It is said that the defendant was entitled to have had a verdict directed for him on the ground that it was conclusively shown that Melhouse was not engaged in his master's business. The petitioner says, to quote from the petition: "The only testimony in the case is that he was an employee of the defendant. We have the positive, sworn testimony of the defendant that the driver was not permitted or authorized to use the car for any purpose excepting in the delivery of groceries in his regular employment. We have the positive sworn testimony of the driver that he had not used the car for any other purpose excepting in this single instance." The transcript filed in this court does not, in our opinion, support this statement. The defendant was the first witness called. He testified in part as follows: "Q. What was his (Melhouse's) duty in your employ? What did he do? A. His duty was to deliver the groceries. Q. And did he drive this particular truck? A. Yes, sir. Q. That was true on the 30th day of July? A. Yes, sir. Q. He was the truck driver? A. Yes, sir. Q. And he was working for you on that day as such truck driver? A. Yes, sir. Q. *You have heard about this accident and injury to the plaintiff, Mr. Feldman?* A. *Yes, sir.* Q. And do you *know the truck used at the time?* A. *Yes, sir.* Q. Was that your truck? A. Yes, sir. Q. *Was this boy at that time driving for you?* A. *Yes, sir.* Q. *And in your employ and in your business?* A. *Yes, sir.* Q. That is all."

Melhouse, after testifying that he had taken the truck that morning and driven down to the depot to mail some letters of his own, testified with reference to his return journey and continued as follows: "Q. And where were you going at that time? A. I was going back to the store. Q. This was before you had started in your duties at the store? A. No, it wasn't. Q. What had you been doing before that? A. I opened the store every morning at seven thirty. Q. Then you stayed

at the store for some time? A. *Until they came around there.* Q. *Until some of the Feldmans came?* A. *Yes, sir.* Q. *And then your duties from that time on was to make deliveries?* A. *Yes, sir.* Q. Was Mr. Feldman around that day? A. He was not. Q. Was he in town? A. No, he wasn't. . . . Q. These letters you were taking down were personal letters you had written? A. Yes, sir. Q. To some of your people? A. Yes, sir. Q. And you were then going back to the store? A. Yes, sir. Q. What was your purpose in going back to the store? A. To go back and deliver groceries. Q. You had not made any deliveries yet that day? A. No, sir. . . . Q. Where was this truck kept? A. It was kept in the house right beside Mr. Feldman's house. Q. You delivered it there at night? A. I took it there every night when I got through work. Q. *And would get it in the morning?* A. *Yes sir.* Q. *You had used it sometimes to go home to your meals at noon?* A. *Yes, sir.* Q. *And would take letters to the depot or post office?* A. *Yes, sir.* Q. *For yourself and Mr. Feldman?* A. *Yes, sir.* Q. *That had been your custom all the time you were there?* A. *Yes."*

Feldman further testified: "Q. This was your truck, you owned this Dodge truck? A. Yes, sir. Q. And what authority had you ever given Mr. Melhouse with reference to its use? A. Well just to deliver the groceries, that is all. Whenever there was orders to be delivered. Q. *Had you ever at any time authorized him in any way to use the car for his own business or pleasure?* A. *Not for his own private use, no.* Q. This was part of the equipment of your business, this automobile truck? A. Yes, sir. Q. *Did you ever employ Mr. Melhouse to make deliveries of mail or to get the mail using this truck?* A. *No, the mail carrier brings the mail and takes the mail right from the store, whatever there is to be mailed.* Q. *Did you have any knowledge of Mr. Melhouse ever taking the truck for the purpose of mailing his own letters?* A. *No, I didn't."*

Melhouse further testified that he had not at any time prior to the accident carried any mail either for Feldman or himself; that he arrived at the store about 7:30 o'clock; that he usually swept out and fixed up the counters; that on the morning in question Feldman's daughter came to the store about 8 o'clock; that he wrote the letters in question after he had done his work, then he took them to the station

to mail them and had not made any deliveries prior to that time. The evidence shows clearly that this accident happened within Melhouse's working hours. He had testified that it was his duty to make deliveries after the Feldmans came to the store in the morning. He was the one who would get the truck in the morning and take it to the garage at night. He sometimes used it to go home to his meals. The record does not show whether Feldman knew of this, but it is not unreasonable to infer that he did. Neither is there any testimony that specifically negatives the employer's assent to such use of the truck by the employee. Feldman negatives only any authority of Melhouse to use the truck for his own business or pleasure. This does not negative express or implied authority for him to use it on a permissible personal errand during working hours, thereby advancing the employer's interest through the saving of time. The cases cited in the original opinion indicate that an employer may be liable for injuries to third persons sustained during such permissible or authorized use. See, particularly, Dierks v. Newsom, 49 Cal. App. 789, 194 Pac. 518; Ward v. Teller Reservoir & Irrig. Co. 60 Colo. 47, 153 Pac. 219; Snyder v. Eriksen, 109 Kan. 314, 198 Pac. 1080; Walsh v. Feinstein, 251 Mass. 109, 146 N. E. 355. The principles according to which a master may be held liable for the act of his servant in driving his automobile or truck, are not new or peculiar to the law of automobiles. One of the best expressions of the controlling principles is that found in Ritchie v. Waller, 63 Conn. 155, 27 L.R.A. 161, 38 Am. St. Rep. 361, 28 Atl. 29, where the injury complained of was occasioned by a servant who was driving a team of horses hitched to a lowly manure wagon, and the contention was advanced that the servant had deviated from his authorized course. The principles were stated as follows:

"Applying these principles to the case at bar, the question for the court below was whether or not Blackwell, for the time being, totally departed from the master's business, and set out upon a separate journey and business of his own. If the rule of law were that any deviation by the servant 'to carry some business of his own into effect' was of itself such a departure, the above question would be one of law. But this, as we have seen, is not the rule of law. To decide the question in a case like the present, the trier must take into account, not only the mere fact of deviation, but its extent and nature relatively

to time and place and circumstances, and all the other detailed facts which form a part of and truly characterize the deviation, including often the real intent and purpose of the servant in making it."

The defendant, himself, at the outset of the trial testified that at the time of the accident Melhouse was driving for him. Counsel says he was tricked into saying this, but the record does not so indicate. The only explanation attempted to be made later on in the record is that as Feldman was out of town he could not know except from hearsay. If he was willing to make an admission based upon hearsay, it would of course be evidence against him. We think this admission, together with the other circumstances indicating the extent to which the control of the truck was entrusted to Melhouse and the use which he made of it on other occasions, amply warrants the submission to the jury of the question as to whether Melhouse was acting in the course of his employment at the time of the collision, notwithstanding his testimony that he was on an unauthorized errand of his own.

Counsel argues to the effect that the presumption or inference which the law permits to be drawn from proof of the ownership of the vehicle and the character of the employment of the driver is entirely overcome when there is evidence offered to prove the negative of the fact presumed or to be inferred, and cites with approval a discussion of the matter in Stumpf v. Montgomery, 101 Okla. 257, 32 A.L.R. 1490, 226 Pac. 65. This discussion is based, in part at least, upon § 2491, Wigmore, Ev. 2d ed. which counsel also approves. As we read the section quoted from Wigmore in the Stumpf Case, it is not authority for the proposition that the introduction of direct evidence to negative the fact to be inferred or which the law authorizes to be presumed necessarily does away with the force of the evidentiary facts from which the inference is said to be warranted, or upon which the legal presumption is based. In other words, it is not authority for saying that evidence which has sufficient probative value to establish an ultimate fact necessarily becomes wholly impotent to prove the same fact when viewed in the light of other evidence from the adversary to disprove such ultimate fact. As we read the learned author he is commenting upon a fault in certain of the decisions which seem to treat the presumption as a makeweight adding force to a permissible inference after more direct evidence has been introduced by the adversary to negative

the fact thus established prima facie. Wigmore says, "If the opponent does offer evidence to the contrary, the presumption disappears as *a rule of law*"—(that is, the jury is no longer compelled to presume the existence of the fact to be inferred—emphasis, too, is ours)—"and the case is in the jury's hands *free from any rule.* . . . It is therefore a fallacy to attribute (as do some judges) an artificial probative force to a presumption, *increasing*"—(not decreasing)—"for the jury the weight of the facts, even when the opponent has come forward with some evidence to the contrary. For example, if death be the issue, and the fact of absence for seven years unheard from be conceded, but the opponent offers evidence that the absentee, before leaving, proclaimed his intention of staying away for ten years, until a prosecution for crime was barred, this satisfies the opponent's duty of producing evidence, removing the rule of law;" (that is, the presumption) "and when the case goes to the jury, they are at liberty to give any probative force they think fit to the fact of absence for seven years unheard from. It is not weighed down with any artificial additional probative effect; they may estimate it for just such intrinsic effect as it seems to have under all the circumstances."

In a note to the above section, Wigmore quotes with apparent approval from Graves v. Colwell, 90 Ill. 612, at page 616, as to the effect of contrary evidence. The Illinois court said:

"It has been said, that presumptions of law derive their force from *jurisprudence* and not from *logic,* and that such presumptions are arbitrary in their application. This is true of irrebuttable presumptions, and, primarily, of such as are rebuttable. It is true of the latter until the presumption has been overcome by proofs, and the burden shifted; but when this has been done, then the conflicting evidence on the question of fact is to be weighed and the verdict rendered, in civil cases, in favor of the party whose proofs have most weight, and in this latter process the presumption of law loses all that it had of mere arbitrary power, and must necessarily be regarded only from the standpoint of logic and reason, and valued and given effect only as it has evidential character. Primarily, the rebuttable legal presumption affects only the burden of proof, but if that burden is shifted back upon the party from whom it first lifted it, then the presumption is of value only as it has probative force, except it be that on the entire case the evidence

is equally balanced, in which event the arbitrary power of the presumption of law would settle the issue in favor of the proponent of the presumption." Sec Jones, Ev. 2d ed. § 366.

Wigmore (§ 2491, note 6, supra), criticizes the opinion in Stack v. General Baking Co. 283 Mo. 396, 223 S. W. 89, going to the other extreme, for its holding that when the presumptive circumstance appears and opposing evidence is offered, even the presumptive circumstance cannot go to the jury because the presumption is not evidence.

Chamberlayne, in the Modern Law of Evidence, vol. 2, § 1085, expresses the same thought as follows:

"When conflicting evidence is introduced upon the point covered by the presumption of law, the presumption itself, the rule of law, is functus officio. It has done its work. The entire inquiry is now one of logic, as to inferences of fact. As the supreme court of Missouri say:—'Presumptions serve a most useful and indispensable part in the correct decision of many questions, but they are out of place, when the facts are known, or are admitted.' The presumption of law, as a rule of substantive law, is equally binding upon the jury. It constitutes, in the substantive law what may be deemed a prima facie right. The jury can no more neglect it than they could fail to give effect to any other rule of law. When, however, the conflicting evidence upon which the jury might reasonably act has been admitted, the entire question of weight becomes a question for the jury. The presumption of law has disappeared, as such. The judge is no longer entitled to rule that the inference of fact upon which it is based has a prima facie value. To do so, would be to comment upon the weight of conflicting evidence which is, in a majority of American jurisdictions, expressly forbidden."

Note 10 of the same authority reads as follows:

"Any inference of fact previously assumed as prima facie correct by the presumption of law continues to exert its full logical effect."

It is certainly illogical to say that that which in one stage of the trial is evidence of a fact sufficient to take the case to the jury must cease to be regarded as any evidence of the same fact when the adversary, even with superior knowledge, says the fact is otherwise. See Morris v. Minneapolis, St. P. & S. Ste. M. R. Co. 25 N. D. 136, 141 N. W. 204. This is not to say that the grounds for the inference may

not be rendered so weak by the more direct and convincing evidence coming from the adversary that the presumptive circumstance can no longer be regarded as substantially supporting a verdict. · But this, in our opinion, is not such a case. In the instant case, as pointed out above, there are circumstances pointing to the authority of Melhouse which are not negatived by the defendant's evidence.

We adhere to the view that a verdict for the plaintiff would have been supported by substantial evidence, so far as the use of the car being within the scope of the employment is concerned, and that it was error to instruct definitely that it was not being so used during a part of the trip described by Melhouse.

We do not deem it necessary to add anything to what has been said concerning the sufficiency of the evidence on the question of negligence, nor to enlarge upon the discussion going to show that the plaintiff was not guilty of contributory negligence as a matter of law. The petition contains much argument in support of the instructions as given on the question of contributory negligence. We adhere to the view that under the charge given the jury might well have set up an entirely erroneous standard by which to judge the conduct of the parties; also, that under facts, such as the evidence in this case tends to prove, it is especially important that an instruction on contributory negligence be such as to enable the jury to distinguish between a precedent or remote cause and a proximate or direct cause. We adhere to the view that an instruction is bad which tells the jury in so many words that the plaintiff cannot recover if his negligence had *anything to do* with bringing about his injury—later amplified, at the request of a confused jury, with the statement that the plaintiff could not recover if his carelessness or neglect had brought about or helped *in some way* to bring about his injury. It is true that there was no request for an instruction on proximate cause, but the failure to make a request does not take away one's right to except to an erroneous or misleading charge. Where the court undertakes to instruct the jury on the law applicable to the case, it is its duty to give correct instructions as far as they go. If the law is misstated in a material point to the prejudice of a party to the suit, it is error. 38 Cyc. 1691. It should be apparent that we do not hold the instruction to be bad because the term "proximate" was not used. The

same thought could readily be conveyed to the jury in language that is more easily understood.

We have reconsidered those points in the original opinion, upon which the decision is based, in the light of the petition for rehearing, and our views are not altered. Some minor questions are raised in the petition which are in no way vital to the decision and which may not arise upon another trial. Hence, there is no occasion to mention them here.

The petition for rehearing is denied.

BURR, NUESSLE, and CHRISTIANSON, JJ., concur.

BURKE, Ch. J. I concur in the result.