WILLIAM M. SMITH v. S. H. BARRY.[1]

December 29, 1944.

No. 33,885.

[1]Reported in 17 N. W. (2d) 324.

*Henry C. Stiening,* for appellant.

*J. E. Hendrickson* and *Christian G. Dosland,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Plaintiff brought action for personal injuries as the result of an accident wherein he was struck down while crossing Broadway in Fargo, North Dakota, by a mail truck belonging to defendant and operated by his agent, Odean Enger. Both plaintiff and defendant are residents of Moorhead, Minnesota. The case was tried three times before Clay county, Minnesota, juries. The first two trials resulted in disagreements of the juries, while in the third trial, here involved, plaintiff recovered a verdict for $9,375. From an order denying his motion for judgment notwithstanding the verdict or a new trial, defendant appeals.

Plaintiff was employed as a motion picture machine operator at the Fargo Theater in Fargo, which fronts on the west side of Broadway. About 11:30 p. m. on October 14, 1941, at the end of

his day's work, he left the theater and walked to the outer edge of the cars parked along the curb on the west side of Broadway. He paused momentarily to observe the traffic and then proceeded to cross Broadway in the middle of the block from the west to the east side thereof. At that time defendant's truck, going south on Broadway, in attempting to pass another car going in the same direction, drove to the east of the center line of Broadway so that its wheels straddled the center line thereof, thus bringing the body of the truck several feet east of the center line. Plaintiff was standing about three feet east of the center line when struck by the left front fender and headlight of the truck, causing him serious injuries.

On appeal, defendant contends that the court erred (1) in refusing to instruct the jury on Chapter VII, Article 4, Section 7-403, of Ordinance No. 641 of the city of Fargo, which provides:

"Pedestrians shall cross streets only at the intersection thereof with other streets, and when crossing streets shall pass over such portion of the street as is included within the lines of the sidewalk projected, and not diagonally,"

and in refusing to permit counsel for defendant in his argument to comment on said ordinance; (2) in refusing to direct a verdict for defendant because of plaintiff's violation of the ordinance; (3) in refusing to instruct that plaintiff was guilty of contributory negligence as a matter of law and (4) that defendant was free from negligence; and (5) misconduct of counsel for plaintiff in making untrue statements in his argument to the jury, which prejudiced the latter and prevented a fair and impartial trial.

■■■ Defendant asserts that at the close of the trial the court erred in refusing to instruct the jury on the ordinance above quoted, which was pleaded in defendant's answer and presented in evidence, and in further refusing to permit counsel for defendant to comment thereon in his argument to the jury. In addition to the ordinance above quoted, the ordinances of Fargo further provide:

Chapter VII, Article 4, Section 7-402.

"The road-beds of streets are primarily intended for vehicles, *but pedestrians have the right to cross them in safety, and all drivers of vehicles shall exercise all proper care not to injure pedestrians.* Pedestrians when crossing a street shall not carelessly or maliciously interfere with the passing of vehicles." (Italics supplied.)

Chapter VII, Article 15, Section 7-1502(3).

"The driver of any vehicle upon a highway within a business or residence district shall yield the right of way to a pedestrian crossing such highway within any clearly marked crosswalk or any regular pedestrian crossing included in the prolongation of the lateral boundary lines of the adjacent sidewalk at the end of a block, except at intersections where the movement of traffic is being regulated by traffic officers or traffic direction devices. *Every pedestrian crossing a highway within a business or residence district at any point other than a pedestrian crossing, crosswalk or intersection shall yield the right of way to vehicles upon the highway."* (Italics supplied.)

With reference to defendant's request on the ordinances above quoted, the trial court in its memorandum stated:

"I have not been able to find any statute of the state of North Dakota *nor any ordinance of the city of Fargo which absolutely forbids a pedestrian from crossing a street at a point other than a pedestrian crosswalk;* in fact, the statutes of North Dakota and the ordinances of the city of Fargo permit pedestrians to cross at places other than crosswalks." (Italics supplied.)

The trial court's instruction included the following:

" '* * * Every pedestrian crossing a highway within a business or residence district at any point other than a pedestrian crossing, crosswalk or intersection shall yield the right-of-way to vehicles upon the highway.'

    \*     \*     \*     \*     \*

" 'Pedestrians in the street at places other than the crosswalks

and sidewalks should use care commensurate with the danger that drivers of vehicles anticipate less travel on foot at such places.

" 'Pedestrians crossing a street at a place other than a crosswalk must exercise due care and yield the right-of-way to automobiles approaching or passing lawfully.'

\* \* \* \* \*

"In this case we are interested only with the use of the roadbed on Broadway in the general vicinity of the Fargo Theatre. I shall refer to it as a street. A violation of the traffic laws governing that is evidence to be considered by you along with all the other evidence in the case. If you find from the evidence in this case that there were such violations by either or both of the parties in question at the time and place in question, then you will determine whether or not those acts constituted negligence; and if so, then you will further determine whether or not that negligence was in fact the proximate cause of the injuries sustained by the plaintiff. By 'proximate cause' we mean the direct primary responsible cause. If you find from the evidence that plaintiff crossed Broadway in the middle of the block, that in doing so he violated a rule in force in the city of Fargo which I told you about—however, that fact alone would not relieve defendant of the duty of maintaining a proper lookout or of using that degree of care enjoined upon all who use the street; nor would that fact alone preclude plaintiff from any recovery, unless you find that plaintiff was negligent and that his negligence was the proximate or contributing cause of the injuries he sustained. Drivers of vehicles may naturally anticipate such traffic on foot across streets at places other than crosswalks; and pedestrians crossing streets at such points should use care commensurate with conditions then existing."

In thus instructing the jury, the trial court (as evidenced by the memorandum in the order denying defendant's motion for a new trial) construed the ordinances of Fargo as not forbidding pedestrians from crossing streets at points other than intersection crosswalks, and refused to instruct the jury with reference to Chapter

VII, Article 4, Section 7-403, of said ordinances, as requested. In substance, the trial court held that the ordinances taken together did not prohibit plaintiff from crossing the street at a point other than a crosswalk so as to make his act in so doing negligence as a matter of law.

An examination of all the ordinances above set forth, with the application thereto of a reasonable rule of construction, leads us to the conclusion that there was no intention on the part of the Fargo city council to forbid pedestrians from crossing streets at points other than the crosswalks. In at least two of the ordinances quoted, consent to cross streets at points other than the crosswalks may be clearly implied, and the only obligation imposed in connection therewith is that of yielding the right of way to traffic if such crossing be made at a point other than the crosswalk.

The rules that govern the construction of statutes are applicable to the construction of ordinances. Downing v. Independent School Dist. 207 Minn. 292, 291 N. W. 613. We have held that a statute is to be construed as a whole so as to harmonize and give effect to all its parts. It is the duty of courts to construe statutes and ordinances to avoid absurd restrictions or results. See, State v. Barge, 82 Minn. 256, 84 N. W. 911, 53 L. R. A. 428; City of St. Paul v. Johnson, 69 Minn. 184, 72 N. W. 64. A careful check of North Dakota cases reveals no decisions in conflict with these broad general principles. Application of these rules to the ordinances in question clearly indicates that they cannot be construed as in effect making it negligence as a matter of law for a pedestrian to cross at other than the crosswalks. When all such ordinances are construed together, it is obvious that the city council intended to permit crossing at other points, subject to the obligation of yielding the right of way to traffic. Accordingly, we must hold that the trial court did not err in refusing to instruct the jury that plaintiff was guilty of negligence as a matter of law because he proceeded to cross Broadway at a point other than the intersection crosswalk, and that it properly left it to the jury to determine whether his action in so doing constituted negligence and whether such negli-

gence was the proximate cause of the accident. Clearly, such questions were for the jury, and we find no error in the instructions given or in the action of the court in submitting them to the jury.

It is interesting to note that the ordinances quoted have been made part of the North Dakota state law, with the exception of Chapter VII, Article 4, Section 7-403, above referred to. In construing such state traffic laws, the supreme court of North Dakota has held that the act of a pedestrian crossing the street at a point other than the crosswalk formed by the intersection does not constitute negligence *per se*. In State v. Yellow Cab Co. 62 N. D. 733, 738, 245 N. W. 382, 384, the North Dakota supreme court stated:

"It is not negligence per se for a pedestrian to cross a street at other than the pedestrian crossings. Subdivision c of § 18 of chapter 162 of the Laws of 1927 says 'Every pedestrian crossing a highway within a business or residence district at any point other than a pedestrian crossing, cross walk or intersection shall yield the right of way to vehicles upon the highway.' And in Clark v. Feldman, 57 N. D. 741 [750], 224 N. W. 167 [170], we held that a pedestrian crossing the street elsewhere than at the crossing was under the necessity of continuous observation of approaching traffic and that it was his duty to exercise due care to avoid collisions with vehicles. But this does not absolve a driver from exercising due care. In the case cited we held that 'questions of negligence and contributory negligence must be determined with reference to standards of conduct prescribed by law.' "

■ We do not agree with defendant's contention that, regardless of the ordinances aforesaid, plaintiff was guilty of contributory negligence as a matter of law. The evidence indicates that plaintiff continuously observed the traffic both to the north and south before and while crossing the street. He had already passed the center of the street when he was struck by defendant's truck, which had crossed over to the east side of the street. Plaintiff's conduct could not be held negligent as a matter of law, and we hold that the court properly submitted this issue to the jury.

■ Defendant asserts that, regardless of the conduct of plaintiff, he was free from any negligence contributing to the accident. In support of this, he denies that his truck was speeding or that it was on the left side of the street, and contends that it was lawfully traveling on the highway at all times. The ordinances of Fargo further provide:

Chapter VII, Article 15, Section 7-1515(1).

"The driver of a vehicle shall not drive to the left side of the center line of a highway in overtaking and passing another vehicle proceeding in the same direction unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be made in safety."

In addition, there was an ordinance making it prima facie evidence of negligence for a motor vehicle to travel in excess of 25 miles per hour on the street at the point where this accident occurred. The court instructed the jury with reference to these ordinances and explained the meaning of "proximate cause" and "prima facie" evidence.

Plaintiff presented witnesses who testified that the truck was driving "quite fast" and that after the accident plaintiff was found "lying to the east of the center of said street"; that "he was standing three or four feet east of the center of the highway when struck by the truck" and that the mail truck "went by like a flash"; that plaintiff's glasses were found "about 66 feet north" of the point of contact; and that the driver of the truck admitted he was on the wrong side of the street while passing the car ahead of him. One witness testified that he was driving south on Broadway at a rate of 18 to 20 miles an hour when the truck passed him at a speed of about 35 miles an hour just before the accident. Other witnesses testified that the driver of the truck ran back from 50 to 60 feet to the place of the accident after he had brought the truck to a stop, although in opposition thereto defendant's driver asserts that he had merely pulled up to that point to park his truck after previously having stopped after the accident.

It is clear from all the foregoing that there is ample evidence reasonably to sustain the jury's finding that defendant's driver was guilty of negligence in speeding, in driving to the left side of the street when such movement could not be made with safety, and in otherwise failing to exercise ordinary care in connection with this accident; and that the court properly submitted this issue to the jury for its determination. Williams v. Jungbauer, 191 Minn. 16, 252 N. W. 658.

■ Defendant asserts that plaintiff's counsel was guilty of misconduct because in the latter's argument to the jury he stated:

"Now, then, what did Wilbur Anderson say? He said, if I am not mistaken—and I want you to bear that in mind, because if I am, I don't want you to consider it at all, because I don't want to say anything here that isn't exactly borne out by the record; but it's pretty hard, and you know that, to keep all of those facts in your own mind. But when he [Enger] got to the police station the boy said—or was it at the scene of the accident; no, I don't think so, because there he said 18 or 20 miles, and this Wilbur Johnson [Anderson] said, 'Why, you're crazy.' *But at the police station he [Enger] finally—when he was making his report he finally told Policeman Anderson that he was going about 35 miles an hour."*

It is not disputed by counsel for plaintiff that the italicized portion of the above statement was error and that Enger did not at any time admit he was going 35 miles per hour, although the witness Johnson had so testified. However, counsel for plaintiff promptly corrected the error before any damage was occasioned or any misconception created in the minds of the jurors. At the close of the argument the following took place:

"Mr. Stiening [counsel for defendant]: May it please the court, at this time the defendant objects to that part of the argument of plaintiff wherein he stated that when Mr. Enger got to the police station, that he then stated he was traveling 35 miles an hour. That objection is based upon the ground there is no such evidence or

testimony in the record. And we further ask that the court caution the jury in reference to that part of the argument.

"Mr. Dosland: I also stated, may it please the court, *that that was my impression and that if it wasn't so, to use their own recollection in the matter.*

"Judge Thompson: Well, the court will instruct the jury that they are the sole judges of all the facts in the case, including the credibility of witnesses." (Italics supplied.)

At the close of the court's charge, counsel for both parties were asked by the court: "Now, gentlemen, have I said anything inadvertently?" to which inquiry both counsel responded in the negative.

The matter of granting a new trial for improper remarks or argument of counsel rests almost wholly in the discretion of the trial court, whose action will not be reversed except for a clear abuse of such discretion. 5 Dunnell, Dig. & Supp. § 7102, and cases cited. We have held that we will not reverse an order denying a new trial because counsel for the prevailing party expressed an erroneous opinion that the evidence adduced certain facts, especially when the trial court cautioned the jury in connection therewith. See, Regali v. M. St. P. & S. S. M. Ry. Co. 152 Minn. 407, 188 N. W. 1003. Here, in view of the cautionary remarks of counsel for plaintiff prior to making the statements in question; the pointed objection thereto by counsel for defendant in the presence of the jury; and the court's instructions at that time and its inquiry at the close of the instructions, we cannot escape the conclusion that there was no abuse of discretion in refusing to grant a new trial because of such remarks. As previously stated by this court: "It [the jury] is not swayed by every imprudent or wrongful remark of counsel. We must credit it with exercising good judgment." State v. Hass, 147 Minn. 269, 271, 180 N. W. 94, 95. The trial court is in a much better position to determine whether some remark of counsel was materially prejudicial. We hold that

there was no abuse of discretion in refusing to grant a new trial on the grounds of misconduct of counsel.

Order affirmed.

[1]Reported in 17 N. W. (2d) 305.