Willard GROSSMAN, Appellant,

v.

AERIAL FARM SERVICE, INC., et al., Respondents.

No. C8–85–1934.

Court of Appeals of Minnesota.

March 25, 1986.

James R. Olson, New Ulm, for appellant.

Kurt D. Johnson, New Ulm, for respondents.

Heard, considered and decided by HUSPENI, P.J., and FOLEY and NIERENGARTEN, JJ.

## OPINION

NIERENGARTEN, Judge.

This appeal is from a partial summary judgment in favor of respondents Aerial Farm Service, Inc., Roger Krause and Doug Clark on grounds that the action was barred by Minn.Stat. § 541.07(8) (1984), which imposes a two-year statute of limitations on actions brought to recover damages for improper application of a pesticide. We affirm.

## FACTS

Appellant Willard Grossman owns farmland which he rents to the Suess Brothers for the planting of crops. The Suess Brothers contracted with respondents Aerial Farm Service, Inc., for the sale and aerial application of a herbicide ("2, 4–D") on a section of Grossman's tillable acreage. Roger Krause sprayed the chemical on the crops; it drifted from its intended target and damaged the elm trees adjacent to the field.

Grossman sued for damages to his trees, alleging negligent application of the herbicide, trespass to real property and breach of contract.

Farm Services and Krause moved for partial summary judgment claiming Grossman's action was barred by the two year statute of limitations governing recovery of damages for improper application of pesticides. *See* Minn.Stat. § 541.07(8) (1984).

The trial court granted partial summary judgment in favor of Farm Services and Krause and Grossman appeal.

## ISSUES

1. Is Grossman's action alleging negligent application of a herbicide controlled by the two year statute of limitations set forth at Minn.Stat. 541.07(8)?

2. Was the contract between the Suess Brothers and respondents for sale and aerial application of a herbicide within the coverage of the Uniform Commercial Code?

## ANALYSIS

1. Grossman argues the two-year limitations period set forth at Minn.Stat. 541.-07(8) does not control his action because it deals exclusively with improper application of *pesticides* rather than improper application of *herbicides.* The statute provides:

> Except where the uniform commercial code or this section otherwise prescribes, the following actions shall be commenced within two years:
>
> *       *       *       *       *       *
>
> (8) Against the person who applies the pesticide for injury or damage to property resulting from the application, but not the manufacture or sale, of a pesticide.

Minn.Stat. 541.07(8) (1984).

The trial court decided that the herbicide 2,4–D is a "pesticide" within the meaning of the limitations statute, basing its decision on the definition of pesticide used in Minn.Stat. 18A.21, subd. 25 (1980).[1] Although application of a herbicide would certainly be included in Minn.Stat. 18A.21, subd. 25, which defines a "pesticide" as all chemicals used to destroy both weeds and insects, *see* Minn.Stat. § 18A.21, subd. 25 (1984), subdivision 1 of the same statute specifically states that all defined terms are to be used solely for purposes of administrating sections 18A.21 to 18A.45, *see id.* subd. 1, and there is no indication in other provisions of Chapter 18A that the

defined terms are to have any further application beyond that chapter.

▆▆▆ We therefore are compelled to apply the fundamental rule of statutory construction that statutes must be construed with reference to the objects sought to be accomplished. *Knopp v. Gutterman,* 258 Minn. 33, 40 102 N.W.2d 689, 695 (1960). It is assumed that the legislature will not engage in a futile act nor attribute to a statute an intent to bring about an absurd or unreasonable result. *Smith v. Barry,* 219 Minn. 182, 187, 17 N.W.2d 324, 327 (1944).

It seems unreasonable for the legislature to make an arbitrary distinction between a pesticide and a herbicide, when both are chemicals applied to crops to eradicate unwanted elements. The possible toxic side effects of each are similar and presumably the time for exposure of problems caused by negligent application are nearly identical. Although Chapter 18A cannot be used as direct evidence of the term's meaning, it is some indication at least in the regulatory setting of what type of agents the legislature has determined the term pesticide should include.

▆▆▆ A reasonable interpretation is that the legislature did not intend to exclude from the two year limitations period set forth at Minn.Stat. § 541.07(8) actions brought for negligent application of a herbicide.

2. Grossman next argues that the contract for the sale and application of the herbicide is within the coverage of the Uniform Commercial Code, thereby exempting his cause of action from the two year limitations period of Minn.Stat. § 541.07(8). *See* Minn.Stat. § 541.07 (1984). If Grossman's action is within the coverage of the Uniform Commercial Code, he has four years from the date of injury to commence his lawsuit. *See* Minn.Stat. §§ 336.2–725 (1984).

---

**1.** Minn.Stat. §§ 18A.21 to 18A.45 regulate the licensing, record-keeping, inspection and sale of pesticides.

Article Two of the Uniform Commercial Code applies only to transactions or sales of goods. *See* Minn.Stat. §§ 336.2–102 –106 (1984). But here, the contract contained both sale of goods (herbicide) and rendition of services components (aerial application) components.

We have, then, the question of the applicability of Article 2 of the Uniform Commercial Code to mixed goods and services contracts. Both parties agreed that determination of this issue could best be resolved by adopting the test applied in *Bonebrake v. Cox*, 499 F.2d 951, 960 (8th Cir.1974).

*Bonebrake* involved the issue of whether a contract dealing with the sale and installation of bowling equipment fell within the provisions of Article 2 of the Uniform Commercial Code. The *Bonebrake* court enunciated the following test to be applied in mixed goods and service contracts:

> The test for inclusion or exclusion is not whether they are mixed, but, granting that they are mixed, whether their predominant factor, their thrust, their purpose, reasonably stated, is the rendition of service, with goods incidentally involved (e.g., contract with artist for painting) or is a transaction of sale, with labor incidentally involved (e.g., installation of a water heater in a bathroom).

499 F.2d at 960 (footnotes omitted).

The trial court, applying the *Bonebrake* test, found as a matter of law that the dominant purpose and character of the contract between the Suess Brothers and the Aerial Farm Service was for services (the aerial application of the herbicide), and that sale of the herbicide was merely incidental to the essential service character of the contract, thereby excluding it from coverage of the Uniform Commercial Code.

Grossman maintains that determination of the predominant purpose of a contract is a factual matter inappropriate for disposition by summary judgment. There are no factual disputes here for the jury to consider but only a question of whether the predominant purpose of the contract is for goods or services.

There are several methods by which the Suess Brothers could have applied the herbicide, including ground spraying through use of a tractor and trailer. They selected, however, a method of application which could only be performed by a contractor equipped to handle their specific request. By making such selection, the dominant purpose and character of the contract between the Suess Brothers and respondents became one for services and, as a result, the transaction did not fall within the scope of the uniform commercial code, and the four year statute of limitations of the code is not applicable.

### DECISION

Appellant's claim against respondents for negligent application of a herbicide is barred by Minn.Stat. § 541.07(8) for failure to commence suit within two years after the alleged damage occurred.

This decision is limited to Grossman's claim of negligent application of a herbicide and does not preclude him from pursuing other causes of action raised in his complaint, including that of trespass to real property.

Affirmed.