STATE of Minnesota, Respondent,

v.

Luke A. OTTERSTAD, Appellant,

Robert A. Rudnick, Appellant.

Nos. A05–178, A05–179.

Supreme Court of Minnesota.

July 12, 2007.

Charles R. Shreffler, Mohrman & Kaardal, P.A., Minneapolis, MN, Alan E. Untereiner, Daniel R. Walfish, Robbins, Russell, Englert, Orseck & Untereiner LLP, Washington, D.C., Thomas Brejcha, Chicago, IL, for Appellant.

Lori Swanson, Minnesota Attorney General, St. Paul, MN, Michael J. Scott, Office of Anoka City Prosecutor, Anoka, MN, for Respondent.

## OPINION

ANDERSON, G. BARRY, Justice.

Appellants Luke A. Otterstad and Robert A. Rudnick appeal their convictions under Minn.Stat. § 609.74(1) (2006) (the *state public nuisance statute*) *and* Anoka, Minn., Code §§ 36–81 to 36–89 (2004) (the city's sign ordinance) for their display of political signs on the Ferry Street bridge over Highway 10 in Anoka. We hold that the state did not prove that appellants maintained a condition that endangered a

considerable number of members of the public in violation of Minn.Stat. § 609.74(1). We also conclude that convictions under the unamended text of an amended ordinance must be vacated. We reverse and vacate.

On September 21, 2004, at about 4 p.m., Luke Otterstad and Robert Rudnick ("appellants") displayed two signs on the public sidewalk of the Ferry Street bridge above Highway 10 in Anoka. Both signs were about four feet high, and when displayed side-by-side the two signs looked like one sign about 13 feet long. The first sign contained the word "ABORTION" at the top and a graphic photograph of an aborted fetus below. The second sign contained the message "PATTY WETTERLING IS PRO–ABORTION." Both signs were posters on Styrofoam backing with no markings or text on the reverse side. Appellants tucked the corners of the signs into the bridge's chain-link fence to hold the signs in place. The signs were visible to west-bound rush-hour traffic below. Appellants characterize the display of the signs as a protest against abortion and Patty Wetterling's candidacy for the U.S. House of Representatives.

At some point an anonymous phone-caller complained to the Anoka Police Department that there was a graphic picture of an aborted fetus above the highway. Officer Anthony Newton was dispatched to the scene and told appellants to remove the signs as they were "extremely graphic in nature and a call was received from a concerned citizen and they were creating a public nuisance." Appellants responded that the First Amendment gave them the right to display their signs. Newton radioed for assistance, and Sergeant Michael Goodwin responded. While waiting for Goodwin to arrive, Newton observed a rear-end accident on the bridge—behind

appellants' signs. Newton's report described the accident as "due to onlookers," and Goodwin later described it as "gawker-related." Sergeant Goodwin's report also mentions that another accident occurred ten minutes prior to the "one that had already occurred in front of them," but Goodwin's report does not explain where, why, or how this other accident occurred.

When Goodwin arrived, he told appellants to remove the signs as they were creating a public nuisance; they refused to do so and Goodwin arrested them.

Two days later, at the same location and the same time of day, appellants displayed signs essentially identical to the first two. Sergeant Goodwin arrived and again asked appellants to leave. They again refused. Goodwin again arrested them.

Appellants were each charged with ten misdemeanor counts. The state eventually dropped all but two: (1) violation on September 21 of the Anoka sign ordinance, Anoka, Minn., Code §§ 36–81 to 36–89 (2004), and (2) violation on September 23 of the public nuisance statute, Minn.Stat. § 609.74(1). The parties agreed to a stipulated facts trial.[1]

The district court found appellants guilty on both counts. On the sign ordinance charge, the parties stipulated that appellants' signs were "temporary political signs" for purposes of the ordinance, that they were placed in a public right-of-way or easement, and that appellants did not obtain a permit from Anoka. The court ruled that appellants' failure to obtain a permit for their signs violated the sign ordinance. On the public nuisance charge, the court ruled that appellants had intentionally endangered the safety of the public by displaying signs that were likely to distract drivers. Appellants were each

---

1. *See* Minn. R.Crim. P. 26.01, subd. 3.

sentenced to a total of 60 days in jail, $600 in fines, and two years' probation. The jail term and most of the fines were stayed pending this appeal.

Appellants appealed and the court of appeals affirmed. *State v. Otterstad,* Nos. A05–178 & A05–179, 2005 WL 3527236, at *8 (Minn.App. Dec. 27, 2005). We granted review.

Appellants raise four issues for our consideration. First, they argue that the district court and court of appeals erred in construing the public nuisance statute, Minn.Stat. § 609.74(1) (2006), and in finding that the evidence was sufficient to support their convictions. Second, they argue that application of the public nuisance statute to appellants violates their First Amendment rights. Third, they argue that Anoka's apparent prohibition of temporary political signs in public rights-of-way violates the First Amendment, and that the sign ordinance should be interpreted narrowly to avoid this result. Finally, they argue that the public nuisance statute is unconstitutionally vague.

## I.

The public nuisance statute, Minnesota Statutes § 609.74(1), provides:

> Whoever by an act or failure to perform a legal duty intentionally does any of the following is guilty of maintaining a public nuisance, which is a misdemeanor:
>
> (1) Maintains or permits a condition which unreasonably annoys, injures or endangers the safety, health, morals, comfort, or repose of any considerable number of members of the public[.]

Appellants argue that this section does not reach their conduct because they did not maintain or permit a condition as required by the statute and their display did not have the degree of permanence re-

quired to be a "condition." Appellants also argue that the evidence is insufficient to support their convictions because there is no evidence that they created a danger to the public and that they did not have the required statutory intent. The state disagrees.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution requires the state, in a criminal case, to prove beyond a reasonable doubt every fact necessary to constitute the crime with which the defendant is charged. *See In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). In a claim of insufficient evidence, our review is limited to a painstaking analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, is sufficient to support the verdict. *State v. Webb,* 440 N.W.2d 426, 430 (Minn.1989).

From the outset of this case, the state's prosecution of appellants under section 609.74(1) has been for endangering the safety of a considerable number of members of the public, not for "annoying" or "injuring" the "health, morals, comfort, or repose" of the public. Appellants' conviction under section 609.74(1) therefore required the state to prove beyond a reasonable doubt that appellants maintained a condition that endangered the safety of a considerable number of members of the public. As evidence of a danger to the public, the state presented: the fact that an anonymous phone call was made about the signs; the fact that an accident occurred on the Ferry Street bridge and that a second accident occurred earlier; the fact that a driver on the Ferry Street bridge yelled at appellants that they had created a traffic hazard; and the nature of appellants' display.

None of those pieces of evidence, alone or in the aggregate, establishes that appel-

lants' signs endangered a considerable number of members of the public. The record makes clear (and the state conceded at oral argument) that the anonymous phone call was prompted by the content of the signs, not their effect on traffic. It is also undisputed that the accident on Ferry Street involved drivers who could see only the blank backs of appellants' signs. While Sergeant Goodwin characterized the accident as "gawker-related," whatever gawking occurred was apparently the result of the police investigation, not appellants' signs. As for the unidentified other accident, there is only a passing reference in Goodwin's September 21 report to another accident, with no indication of where, why, or how it occurred. In short, nothing in the record connects the accidents with the display.

This brings us to the nature of appellants' display. The court of appeals relied on appellants' intentions in finding a danger to the public: "[d]eliberately distracting drivers from the task of driving and redirecting their attention to the signs would have as a natural and probable consequence endangerment of drivers' safety." *Otterstad,* 2005 WL 3527236, at *3. In other words, the court of appeals concluded that the public was endangered because appellants intended drivers to look at the signs. But the state's highways are awash in signs—some political, some commercial, some informational, all vying for the attention of motorists. The use of road signs by transportation authorities to present drivers with safety, directional, and other information bears witness to the common understanding that not every sign that attracts a driver's attention creates a danger to the public. Appellants undoubtedly intended for drivers to read their message. In this they were no different from anyone else who posts signs near highways.[2]

Nor does the content of appellants' signs persuade us that the public was endangered. The state suggested, and the district court agreed, that the graphic picture of the aborted fetus would be particularly distracting, thus endangering the public and violating section 609.74(1). The state cites no evidence to support this conclusion. Conviction requires proof beyond a reasonable doubt that the public was actually endangered—in this case, proof that motorists were unable to safely operate their vehicles due to appellants' signs. Such evidence might have included an accident involving motorists who could actually see appellants' signs; testimony from drivers whose ability to control their vehicle was impaired by appellants' signs; or a police officer's observation of traffic disturbances involving drivers distracted by appellants' signs. The state offered no such evidence. Rather, the state cited one accident that could not have been caused by the graphic picture of the fetus on appellants' signs and then argued that the picture was so obviously distracting as to require no further proof. We do not agree.

■ Our decision does not foreclose the possibility that *some* sign might distract motorists in such a way as to endanger the public and constitute a public nuisance. Nor does our decision require a police officer on the scene to wait until an acci-

---

**2.** The concurrence notes, and we agree, that appellant's signs were qualitatively different than traffic safety and informational signs. But that qualitative difference is, in this case, immaterial. The state has primarily argued that because appellants intended motorists to look at their signs, the public was endan- gered. The state has not focused on the graphic content of the signs, perhaps in order to avoid the very First Amendment problems that the concurrence raises. Thus, it is appropriate to note that signs, of whatever type, and wherever placed, are an omnipresent feature in the life of a motorist.

dent occurs or is threatened before intervening. An officer can and should use his or her experience and expertise to determine whether a sign constitutes a danger to a considerable number of members of the public before that danger manifests itself in injuries. But to maintain a conviction under section 609.74(1) for endangering the safety of the public, the state must prove through testimony and evidence that the public was in fact endangered. Here, the state has not done so. We hold that the district court erred when it found appellants guilty under Minn.Stat. § 609.74(1) of intentionally endangering the safety of a considerable number of members of the public.

Because we conclude that section 609.74(1) does not reach appellants' conduct, we need not consider their other arguments under the U.S. Constitution. *See State v. Wyatt,* 361 N.W.2d 839, 840 (Minn.1985) ("Having disposed of this case on a factual basis, we need not consider the constitutional challenge."); *see also State ex. rel. Humphrey v. Philip Morris USA, Inc.,* 713 N.W.2d 350, 355 (Minn. 2006) ("[W]e do not reach constitutional issues if the matter can be resolved otherwise.").

## II.

Appellants were charged with and convicted of violating Anoka, Minn., Code § 36–83(a), which stated:

Signs shall not be permitted within the public right-of-way or easements, except that the City Manager or designee of the City Manager, for a period not exceeding two weeks, may allow temporary signs and decorations to be erected upon or strung across the right-of-way. A banner permit is required for erection of such a sign.

After trial in the district court, an appeal to the court of appeals, and argument before this court, it came to light that section 36–83(a) had been amended on July 30, 2004—prior to appellants' alleged violations—to read:

Signs shall not be permitted within the public right-of-way or on easements, except that the City Manager or a designee of the City Manager may allow temporary signs for local community events to be erected upon a site designated by the City. A banner permit is required for such signs, which will be permitted for a period not exceeding two (2) weeks. Banners that promote religious, political, business or personal causes will not be permitted.

After supplemental briefing, both parties now agree that the amended section 36–83(a) was in effect on the date of appellants' alleged violations, but that appellants were charged and convicted under the unamended ordinance.

■ "When a section or part of a law is amended, the amendment shall be construed as merging into the original law, becoming a part thereof, and replacing the part amended, and the remainder of the original enactment and the amendment shall be read together and viewed as one act passed at one time[.]" Minn.Stat. § 645.31 (2006). "The rules that govern the construction of statutes are applicable to the construction of ordinances." *Smith v. Barry,* 219 Minn. 182, 187, 17 N.W.2d 324, 327 (1944).

■ According to the state, the fact that appellants were charged and convicted under a superseded ordinance is of no consequence because appellants "were charged and convicted only under the language of the first phrase of both versions which remained essentially unaltered." In other words, the state asserts that we need only concern ourselves with the phrase "[s]igns shall not be permitted within the public

right-of-way." This assertion ignores the fact that the unchanged text and the amended text are part of the same sentence and must be read together as one enactment. Minn.Stat. § 645.31. So read, the two ordinances are substantially different. Both prohibit signs in public rights-of-way, but while the unamended ordinance has an exception for any sign for which a banner permit is granted, the amended ordinance limits this exception to signs for local community events.

The two ordinances present different interpretive and constitutional questions. Appellants have argued throughout this case, relying on the unamended ordinance, that Anoka, Minn., Code § 36–82.1 [3] exempted their temporary political signs from all permit requirements, including the banner permit requirement. This argument is not available to them under the amended section, because the signs were not associated with a local community event. Additionally, had appellants been charged under the correct section, they would have had the opportunity to fully develop their argument that the amended section's prohibition of core First Amendment speech is an unconstitutional content-based restriction.

Appellants have defended themselves against charges brought under a superseded ordinance. The state, nevertheless, requests that we affirm the convictions under the amended version of the ordinance. To do so would deny appellants their right to present a defense to the correct ordinance. Nor can we rule on the constitutionality of the amended ordinance, which the parties have not thoroughly briefed. We therefore vacate appellants' convictions under Anoka, Minn., Code § 36–83(a) without prejudice to the state's ability to charge appellants under the correct ordinance if it so chooses.

Reversed and vacated.

PAGE, Justice (concurring).

I write separately for two reasons. First, while I agree with the court's analysis leading to the conclusion that appellants' convictions under the Anoka, Minn., Code, must be vacated, and with the reversal of appellants' convictions under the state public nuisance statute, Minn.Stat. § 609.74(1) (2006), I would reverse the convictions under the public nuisance statute simply because it is clear on this record that the state's prosecution of appellants under the statute was content-based and therefore barred by the First Amendment. *See Police Dep't of City of Chicago v. Mosley,* 408 U.S. 92, 95, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972) ("[A]bove all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content.").

I also write separately to express my disagreement with the court's portrayal of appellants' signs. According to the court, because appellants "undoubtedly intended for drivers to read their message," appellants are "no different from anyone else who posts signs near highways." I disagree. First, not just anyone can post signs near highways, much less within the right-of-way, as appellants stipulate they did. Minnesota Statutes § 160.2715 (2006) makes it a misdemeanor for anyone but "the road authorities, their agents, employees, contractors, and utilities" to "place" or "affix" any object within the limits of any

---

**3.** At the time in question, Section 36–82.1 read in pertinent part:

\* \* \*

(b) The following signs do not require a permit or permit fee; however, the other requirements of this Article shall apply:
(1) Temporary political signs.

highway. I would not equate appellants with "road authorities, their agents, employees, contractors, and utilities." [1]

Nor would I equate appellants' signs with those placed along highways by "road authorities, their agents, employees, contractors and utilities." To equate appellants' signs with traffic control signs placed along highways by road authorities for public transportation safety and information purposes, such as speed limit signs, highway identification and directional signs, and variable message signs used to warn motorists of traffic conditions ahead or Amber Alerts, is simply unwarranted. These signs, while "undoubtedly intended for drivers to read their message," are qualitatively different from the signs displayed by appellants, which have no public transportation safety or information purpose. To equate appellants' signs with those placed along or near highways by road authorities is to devalue transportation safety.

The court muses that "[t]he use of road signs by transportation authorities to present drivers with safety, directional, and other information bears witness to the common understanding that not every sign that áttracts a driver's attention creates a danger to the public." As discussed above, these musings are misguided. They are also misguided because traffic control signs placed along the highway by transportation authorities are neither intended nor designed to attract a driver's attention away from the act of driving. Traffic control signs placed in the right-of-way by transportation authorities, which are required to be of a prescribed size, shape, coloring, and lettering, are designed and intended to facilitate and make safer the activity of driving.[2] Whatever the purpose of appellants' signs, they were designed and intended to attract a driver's attention away from the act of driving and in no way make that activity safer.

Second, appellants' signs were not the type of signs that can be placed on or near highways. Highway 10 (within which right-of-way appellants placed their signs) is designated as a trunk highway under Minn.Stat. § 161.114, subd. 2 (2006),[3] and is part of the National Highway System.[4]

---

1. Minnesota Statutes § 173.08, subd. 1 (2006), similarly bars the placement of "advertising devices" adjacent to the right-of-way of an interstate or trunk highway. Minnesota Statutes § 173.02, subd. 16 (2006), defines "advertising device" broadly: "any billboard, sign, notice, poster, display, or other device visible to and primarily intended to advertise and inform or to attract or which does attract the attention of operators and occupants of motor vehicles * * *." Minnesota Rule 8810.0500 (2005) makes "[a]ll signs erected or encroaching on any right-of-way" illegal, with exceptions not applicable to appellants or their signs. See Minn.Stat. § 14.38, subd. 1 (2006); U.S. West Material Resources, Inc. v. Comm'r of Revenue, 511 N.W.2d 17, 20 n. 2 (Minn.1994) (noting that duly adopted administrative rules have the force and effect of laws).

2. The Minnesota Manual on Uniform Traffic Control Devices is available at http://www.dot.state.mn.us/trafficeng/otepubl/mutcd/ index.html (last visited June 19, 2007). It prescribes, for example, that guide signs (that is, signs showing such things as route designations, destinations, directions, and distances, as defined in chapter 2A.5.C) on freeways and expressways must have white legends and borders on a green background (chapter 2E.4), that letters on guide signs must be at least 200 mm (8 inches) high (chapter 2E.13), and that exit numbers are placed on the left edge of the sign for a left exit and the right edge of the sign for a right exit (chapter 2E.33).

3. A map of the trunk highways in Minnesota is available at the Minnesota Department of Transportation website, http://www.dot.state.mn.us/maps/cadd/highway_system/mnthsys.pdf (last visited June 19, 2007).

4. A map of the National Highway System, including U.S. Highway 10, is available at http://www.fhwa.dot.gov/hep10/nhs (last visited June 19, 2007).

Minnesota Statutes § 161.434 (2006) allows the commissioner of transportation to make agreements for "the limited use" of the right-of-way along trunk highways, but only for "highway purposes." Appellants had no agreement with the commissioner and their signs were not placed over Highway 10 during rush hour for "highway purposes." In addition, under 23 U.S.C. § 131(c) (2000), signs within 660 feet of the right-of-way of a highway that is part of the National Highway System are limited to:

(1) directional and official signs and notices, which signs and notices shall include, but not be limited to, signs and notices pertaining to natural wonders, scenic and historical attractions, which are required or authorized by law, which shall conform to national standards hereby authorized to be promulgated by the Secretary hereunder, which standards shall contain provisions concerning lighting, size, number, and spacing of signs, and such other requirements as may be appropriate to implement this section,

(2) signs, displays, and devices advertising the sale or lease of property upon which they are located,

(3) signs, displays, and devices, including those which may be changed at reasonable intervals by electronic process or by remote control, advertising activities conducted on the property on which they are located,

(4) signs lawfully in existence on October 22, 1965, determined by the State, subject to the approval of the Secretary, to be landmark signs, including signs on farm structures or natural surfaces, or historic or artistic significance the preservation of which would be consistent with the purposes of this section, and

(5) signs, displays, and devices advertising the distribution by nonprofit organizations of free coffee to individuals traveling on the Interstate System or the primary system.

Appellants' signs satisfied none of these criteria, and to equate appellants' signs with those that do is improper.

MEYER, Justice (concurring).

I join in the concurrence of Justice Page.

HANSON, Justice (concurring).

I join in the concurrence of Justice Page.