CALM WATERS, LLC, Respondent,

v.

KANABEC COUNTY BOARD
OF COMMISSIONERS,
et al., Appellants.

Nos. A06–2019, A06–2361.

Supreme Court of Minnesota.

Sept. 25, 2008.

Rehearing Denied Oct. 28, 2008.

Scott T. Anderson, Ratwik, Roszak & Maloney, P.A., Minneapolis, MN, for appellants.

Grant W. Lindberg, Jimmy A. Lindberg, Lindberg & McKinnis, P.A., Cambridge, MN, for respondent.

Paul D. Reuvers, Jason J. Kuboushek, Iverson Reuvers, LLC, Bloomington, MN, for amicus curiae Association of Minnesota Counties.

Kathleen Heaney, Sherburne County Attorney, Arden Fritz, Assistant County Attorney, Elk River, MN, for amicus curiae Minnesota County Attorneys Association.

OPINION

PAGE, Justice.

Respondent Calm Waters, LLC, submitted for approval an application for a preliminary plat located in Kanabec County, Minnesota. We are asked in this consolidated appeal to determine (1) whether the 60–day rule set out in Minn.Stat. § 15.99 (2006) applies to subdivision applications, and (2) if so, whether the appellants Kanabec County Board of Commissioners, Kanabec County Planning Commission, and Kanabec County Environmental Services

(collectively, the County) complied with the 60–day rule in this case. Because we conclude that even if the 60–day rule applied, the County did not violate it, we decline to reach the question of whether section 15.99 applies to subdivisions. We reverse the court of appeals and hold that the County's denial of Calm Waters' application was valid and timely.

On July 26, 2006, Calm Waters submitted an application to the County for approval of a proposed subdivision on shoreland property in Kroschel Township. The County provided an application form, which required, among other things, a "Township approval letter." Calm Waters enclosed no township approval letter, however, based on its contention that no letter was required by statute or by the Kanabec County Subdivision Platting Ordinance (Platting Ordinance). Consequently, on August 8, the County returned the application as incomplete. Calm Waters resubmitted an identical application on August 14, insisting that no township approval letter was required.

On September 7, 2006, a notice appeared in the local paper indicating that the Kanabec County Planning Commission "[w]ill hold its regular monthly meeting" on September 20, 2006. Calm Waters objected, arguing that by failing to identify the meeting as a statutorily required public hearing, the County had violated Minn. Stat. § 394.26 (2006).[1] The County responded to Calm Walters' objection on September 18, stating that,

> [a]t this time, per [Minn.Stat. § 15.99, subd. 3], Kanabec County Environmental Services will be extending the time limit an additional 60 days so as to address the issue of improper notification as stated in your correspondence.
>
> . . . .
>
> A Public Hearing notice will be given for an October 2006 meeting.

The September 20 meeting proceeded, with Calm Waters and its counsel in attendance. At the meeting, several members of the public spoke out against the proposed subdivision, but no action was taken on the application.

Sometime after the September 20 meeting but before the October meeting, Calm Waters petitioned the Kanabec County District Court for a writ of mandamus directing the County to approve the preliminary plat. Calm Waters argued that the County had failed to deny its application within 60 days as required by Minn. Stat. § 15.99, subd. 2(a), and therefore the application was approved as a matter of law.[2] The district court denied Calm Waters' petition, and Calm Waters filed a notice of appeal with the court of appeals.

■ The County held its next meeting to discuss the subdivision application on October 18, 2006.[3] At the meeting, the

---

**1.** "Notice of the time, place, and purpose of any public hearing shall be given by publication in a newspaper of general circulation in the town, municipality, or other area concerned, and in the official newspaper of the county, at least ten days before the hearing. . . ." Minn.Stat. § 394.26, subd. 2 (2006).

**2.** Minnesota Statutes § 15.99, subd. 2(a), provides in relevant part:

> Except as otherwise provided in this section, section 462.358, subdivision 3b, or

473.175, or chapter 505, and notwithstanding any other law to the contrary, an agency must approve or deny within 60 days a written request relating to zoning. . . . Failure of an agency to deny a request within 60 days is approval of the request.

We use the term "the 60–day rule" to refer to this provision for approval by operation of the statute of an application that is not denied within 60 days.

**3.** The parties dispute whether the County actually gave notice of the public hearing. Calm Waters claims to have learned of the

County decided to deny the application due to the failure to comply with township requirements and county ordinance, stating "[t]he proposed lot sizes do not meet the 20 acres required for lot size within Kroschel Township." Calm Waters appealed the Planning Commission's denial of the application to the Kanabec County Board of Commissioners. Calm Waters' appeal to the County Board was not considered because the Platting Ordinance does not provide for such an appeal.

Next, Calm Waters petitioned the court of appeals for a writ of certiorari to review the County's denial of the application. The court of appeals consolidated Calm Waters' appeal of the district court's denial of mandamus and its petition for a writ of certiorari and, in an unpublished opinion, holding that Calm Waters' application was approved by operation of law under section 15.99, subdivision 2(a), reversed the district court. *Calm Waters, LLC v. Kanabec County Bd. of Comm'rs*, Nos. A06–2019, A06–2361, 2007 WL 3088590 (Minn.App. Oct. 23, 2007). The County petitioned for review, which we granted.

■ For purposes of resolving this case, we will assume, without deciding, that a subdivision application such as Calm Waters' constitutes a "written request relating to zoning" within the meaning of the 60–day rule, Minn.Stat. § 15.99, subd. 2(a) (2006). That leaves us with the question of whether the County's denial of the application was timely and proper, which requires us to construe subdivision 2(a).

Statutory interpretation presents a question of law, which we review de novo. *Hans Hagen Homes v. City of Minnetrista*, 728 N.W.2d 536, 539 (Minn.2007). Section 15.99, subdivision 2(a), provides in relevant part: "[A]n agency must approve or deny within 60 days a written request relating to zoning.... Failure of an agency to deny a request within 60 days is approval of the request."

Calm Waters argues that the court of appeals correctly concluded that its subdivision application was approved by operation of law. Specifically, Calm Waters contends: (1) that its application was complete when submitted on July 26, 2006, because the County did not have authority to require a township approval letter and therefore the 60–day period within which the County was required to approve or deny the application began on that date; (2) that the County's attempt to extend the 60–day period was ineffective because the County's Environmental Services Director had not been delegated the authority by the County to extend the time period; and (3) that, in any event, the Planning Commission's denial of the application on October 18, 2006, was ineffective because under Minn.Stat. § 394.30 (2006) and the Platting Ordinance the Planning Commission's authority was limited to approval of the application and did not include denial. Thus, Calm Waters argues, its subdivision application was not denied within 60 days of its submission and was therefore approved as

meeting only on October 19, when its attorney chanced upon a reference on the County's website. At oral argument, Calm Waters requested that if we resolved the issues before us in favor of the County, we remand to the court of appeals to determine whether Calm Waters received due process of law. We are persuaded, however, that Calm Waters received adequate process. The County asserts that it sent notice to the same addresses to

which it had sent previous communications. The record reflects that the County sent a notice to the Kanabec Times with a copy to Calm Waters. Moreover, the only claimed defect in the notice for the September 20 meeting, at which Calm Waters availed itself of the opportunity to be heard, was the technical failure to identify it as a "public hearing." We therefore decline to remand on this issue.

a matter of law 60 days after its initial submission.

■ We first address Calm Waters' argument that its application was complete when submitted because the County lacked authority to require a township approval letter. Under section 15.99, the 60–day time period for approving or denying a written zoning request begins "upon the agency's receipt of a written request containing all information required by law or by a previously adopted rule, ordinance, or policy of the agency...." Minn.Stat. § 15.99, subd. 3(a). Further, "[a] request must be submitted in writing to the agency on an application form provided by the agency, if one exists." *Id.*, subd. 1(c). "If an agency receives a written request that does not contain all required information, the 60–day limit starts over only if the agency sends written notice within 15 business days of receipt of the request telling the requester what information is missing." *Id.*, subd. 3(a).

Calm Waters is correct that no Minnesota statute or Kanabec County ordinance specifically requires a township approval letter. The County's Platting Ordinance, comprehensive plan, and practices, however, clearly contemplate that the approval of subdivision applications will be coordinated with municipalities and neighborhoods and in conformance with township ordinances. The Platting Ordinance sets forth minimum design standards for subdivisions, requiring that "[p]roposed subdivisions shall be coordinated with existing nearby municipalities or neighborhoods so that the community as a whole may develop harmoniously." The Platting Ordinance also provides that "[p]roposed land uses shall conform to any county or township zoning ordinance in effect." Likewise, the County's comprehensive plan states that "Kanabec County comprehensive planning and zoning is implemented at

the township level" and that "Kanabec County intends that the rural areas of the County be maintained consistent with their existing rural character and desire of the township consistent with MN Chapter 394.33 granting the township authority to adopt local controls including shoreland regulations...." Moreover, the County's practice of providing subdivision applicants with a prepared application form, which includes the requirement that a township approval letter accompany the application, evinces a County policy in conformance with the Platting Ordinances and comprehensive plan requirements. Therefore, we conclude that the County acted within its authority when it required that subdivision applications include a township approval letter. As a result, we also conclude that Calm Waters' failure to provide such a letter means that Calm Waters failed to file a completed subdivision application as required.

Because the County gave Calm Waters written notice that its application was incomplete on August 8, 2006, which was within 15 days of the County having received Calm Waters' application, the 60–day period started over. *See* Minn.Stat. § 15.99, subd 3(a). In response to receiving the notice, on August 14, 2006, Calm Waters resubmitted an identical application again without a township approval letter. It appears from the record that the County may have treated the resubmitted application as though it were complete.

■ On September 18, 2006, within both the initial and the restarted 60–day period, the Kanabec County Environmental Services Director, seeking to comply with the requirements of Minn.Stat. § 15.99, subd. 3(f), sent a letter to Calm Waters extending the 60–day deadline. Minn.Stat. § 15.99, subd. 3(f) (providing that "[a]n agency may extend the time limit in subdi-

vision 2 before the end of the initial 60–day period by providing written notice of the extension to the applicant"). Calm Waters argues that this letter did not extend the 60–day period because it did not constitute an action by an agency within the meaning of subdivision 3(f). Under subdivision 3(f), " '[a]gency' means a ... statutory or home rule charter city, *county*, town, or school district." Minn.Stat. § 15.99, subd. 1(b) (emphasis added).

This argument has no merit. While the parameters of Calm Waters' argument are not clear, we are satisfied, based on our review of the record, that the extension letter was the action of an agency as that term is used in subdivision 3(f). Kanabec County is an agency under the plain language of subdivision 3(f). Further, it appears from the record that Environmental Services is a department within Kanabec County. Moreover, there is nothing in the record to suggest that the Environmental Services Director did not have the authority to act on behalf of that department. Therefore, we conclude that the letter constituted the action of an "agency" within the meaning of subdivision 3(f) and that by that action, the County extended the 60–day deadline for another 60 days in compliance with the provisions of subdivision 3(f).

■ On October 18, 2006, which was within the extended 60–day time period, the Kanabec County Planning Commission denied Calm Waters' subdivision application. Calm Waters argues that the Planning Commission lacked authority to deny the application under Minn.Stat. § 394.30 and the Platting Ordinance, and therefore the denial was invalid, with the result being that the application was approved by operation of law. In making this argument, Calm Waters notes that both the statute and the Ordinance indicate that the commission may "approve" but do not mention authority to deny. It argues,

therefore, that the commission is not the final authority on subdivision applications but rather must report a recommendation of denial to the county board.

■ County ordinances are construed under the same principles as statutes. *See, e.g., Smith v. Barry*, 219 Minn. 182, 187, 17 N.W.2d 324, 327 (1944). In addition, we (1) construe terms in an ordinance according to plain and ordinary meaning, (2) construe ordinances strictly against the government and in favor of property owners, and (3) consider ordinances in light of their underlying policy. *SLS P'ship v. City of Apple Valley*, 511 N.W.2d 738, 741 (Minn.1994) (citing *Frank's Nursery Sales, Inc. v. City of Roseville*, 295 N.W.2d 604, 608–09 (Minn.1980)). An ordinance is to be broadly and practically construed. *See Evans v. City of Saint Paul*, 211 Minn. 558, 564, 2 N.W.2d 35, 38–39 (1942). "The county governments of this state can exercise only such powers as are expressly granted them by the legislature and such as may be fairly implied as necessary to the exercise of the express powers." *Cleveland v. Rice County*, 238 Minn. 180, 181, 56 N.W.2d 641, 642 (1952).

Minnesota Statutes § 394.30, subd. 5, provides, "[t]he [county] board may by ordinance assign additional duties and responsibilities to the planning commission including but not restricted to ... the authority *to approve* some or all categories of subdivisions of land...." (Emphasis added.) The authority to approve "some or all categories" necessarily includes the authority to not approve "some or all categories," that is, to deny. Thus, we conclude that the term "approve" in this context includes the authority to deny. *See, e.g., Oahe Conservancy Subdistrict v. Janklow*, 308 N.W.2d 559, 561–62 (S.D. 1981) ("It is generally held that statutes which vest 'approval' authority imply a discretion and judgment to be exercised to

sanction or reject the act submitted."). It would be anomalous for the Planning Commission not to have the power to deny, otherwise its authority would be rendered meaningless. We therefore conclude that section 394.30 does not prevent a County from delegating the power to deny a plat application to a planning commission.

We turn next to the question of whether the Ordinance delegated such power. The Ordinance provides that "the [Planning] Commission shall determine whether such [subdivision] plan conforms to design standards set forth in this ordinance and conforms to adopted county plans." We conclude that by this authorization the County intended for the Commission to act upon its determination about a plan's conformity, and that for its authority to act to have any meaning, it would necessarily have to encompass both authority to approve and authority to deny. This conclusion is supported by the Ordinance's next sentence, "The Commission may approve a preliminary plan subject to certain revisions." The authority to conditionally approve is broader than mere approval authority and indeed constitutes partial denial. Again, it would be anomalous to authorize the commission to allow conditional approval but not denial. Further, we note that the County itself interprets its Ordinance to give the Planning Commission final authority; when Calm Waters attempted to appeal the denial, it was informed that the County had no internal appeal mechanism. The failure to include a provision allowing for appeal of the Planning Commission's decision to the County Board strongly suggests that the Planning Commission had the authority to make the final decision. Finally, public policy supports an interpretation that allows counties to regulate development with certainty and flexibility. To hold as Calm Waters asks would introduce considerable confusion and uncertainty for counties that have complied with the statutes and adopted a consistent policy that is reasonably apparent to any developer. It is in the public interest to have competent and reliable oversight of development, particularly when, as here, the applicant deliberately seeks to subvert the clear County policy of cooperation with local townships' zoning regulations.

In summary, we conclude that Minn. Stat. § 394.30, subd. 5, in authorizing county boards to delegate approval authority to planning commissions, authorizes the delegation of denial authority, and that the County effectively delegated denial authority to the Planning Commission. We further conclude that the County's denial of Calm Waters' subdivision application occurred within the timeframe set forth in section 15.99. Consequently, we hold that Kanabec County timely denied Calm Waters' subdivision application in compliance with Minn.Stat. § 15.99.

Reversed.

DIETZEN, J., concurs separately with opinion.

MAGNUSON, C.J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

DIETZEN, Justice (concurring in part).

I agree with the disposition reached by the majority and its determination that the County complied with the requirements of Minn.Stat. § 15.99, subd. 2(a) (2006), the 60–day rule. I write separately because I would reach the threshold issue that is not decided by the majority—that is, whether the requirements of the 60–day rule apply to county decisions approving or denying a subdivision application.

The straightforward question presented in this litigation is whether the 60–day rule

applies to the appellant county's decision denying respondent's subdivision application. Without explanation, the majority assumes without deciding that the statute applies and then analyzes whether the county complied with its requirements. The majority has articulated no legal or prudential reason to assess the county's compliance with the 60–day rule without first deciding whether it applies, and I discern none. The grounds on which we traditionally exercise restraint and decline to address an issue properly before us do not apply here. For example, this is not a constitutional question. *See, e.g., State v. North Star Research & Dev. Inst.,* 294 Minn. 56, 81, 200 N.W.2d 410, 425 (1972) (explaining that "this court does not decide important constitutional questions unless it is necessary to do so in order to dispose of the case"); *Minn. Baptist Convention v. Pillsbury Acad.,* 246 Minn. 46, 62, 74 N.W.2d 286, 296 (1955) (same).

Absent a sound reason for failing to decide the threshold issue presented in this case, this court should determine the applicability of the statute to the County. For the reasons that follow, I would conclude that section 15.99 applies to county decisions approving or denying subdivision applications.

Minnesota Statutes § 15.99, subd. 2(a), provides:

> Except as otherwise provided in this section, section 462.358, subdivision 3b, or 473.175, or chapter 505, and notwithstanding any other law to the contrary, an agency must approve or deny within 60 days a written request *relating to zoning,* septic systems, watershed district review, soil and water conservation district review, or expansion of the metropolitan urban service area for a permit, license, or other governmental approval of an action. Failure of an agency to deny a request within 60 days is approval of the request. If an agency denies the request, it must state in writing the reasons for the denial at the time that it denies the request.

(Emphasis added.) The parties agree that the question for interpretation under the statute is whether a subdivision application to a county is a request "relating to zoning."

"Zoning" is generally intended to mean "[t]he legislative division of a region ... into separate districts with different regulations within the districts for land use, building size, and the like." *Black's Law Dictionary* 1649 (8th ed. 2004). Recently we observed that a zoning ordinance is one that " 'regulates the building development and uses of property.' " *Mendota Golf v. City of Mendota Heights,* 708 N.W.2d 162, 172 (Minn.2006) (quoting *In re Denial of Eller Media Company's Applications,* 664 N.W.2d 1, 8 (Minn.2003)).

The words "relating to" mean a connection, link, or logical relation to something. *See American Heritage Dictionary* 1472 (4th ed. 2006) (defining "relate" as "[t]o bring into or link in logical or natural association [and][t]o have connection, relation, or reference"). Because the words "relating to" refer to a connection, link, or logical relationship between objects, they are not words of limitation. Clearly, the phrase "written request relating to zoning" describes something broader than "zoning" itself. Giving the words "relating to" their plain and ordinary meaning results in the conclusion that the phrase "relating to zoning" describes not only requests made under a zoning ordinance, but also other requests that have a connection, link, or logical relationship to a zoning ordinance.

A subdivision application, which is an application for the division of an area of

real estate into subdivided lots,[1] has a clear connection to the "building development and uses of property" covered by a zoning ordinance. *See Mendota Golf*, 708 N.W.2d at 172 (explaining the object of the zoning ordinance). Thus, I would conclude that a subdivision application has a sufficient connection, link, or logical relationship to "zoning" and, therefore, falls within the phrase "relating to zoning" in Minn. Stat. § 15.99, subd. 2(a).

The definition of "official control" in Minn.Stat. § 394.22, subd. 6 (2006), further illustrates the connection between a subdivision application and "zoning." Both zoning ordinances and subdivision controls fall under the definition of "official control." *Id.* ("Such official controls may include but are not limited to ordinances establishing zoning [and] subdivision controls"). Official controls determine "the physical development of a municipality or a county or any part thereof or any detail thereof." *Id.* Under Minn.Stat. § 394.22, subd. 6, subdivision controls and zoning ordinances share the common feature of controlling the physical development of an area of real estate. A subdivision ordinance is part of the county's official controls and, therefore, is part of the county's regulation of the use of land within its boundaries. Thus, the definition of "official control" makes explicit the connection, link, and logical relationship between a subdivision application to a county and zoning.

The introductory language to subdivision 2(a) also supports the conclusion that the statute applies to the county. Specifically, it states that it applies to all requests "relating to zoning" except as provided in section 462.358, subd. 3(b), or section 473.175, or chapter 505. Based on a careful reading of these statutes, it is clear that a subdivision application to the county is not excepted from the time deadline requirements of the statute.

Minnesota Statutes § 462.358, subd. 3(b) (2006), creates a 120–day deadline for municipalities' consideration of subdivision applications. By its own terms, this exception does not apply to a subdivision application to a county. Similarly, Minn. Stat. § 473.175 (2006), establishes a 120–day deadline for a metropolitan council's review of a local government unit's submission of a comprehensive plan. Consequently, this exception does not apply to a subdivision application to a county. Clearly, municipalities are required to meet statutorily imposed time deadlines for consideration of subdivision applications under sections 462.358, subd. 3(b) and 473.175. But I discern no legislative intent to exclude counties from such a time deadline.

Chapter 505 relates to, among other things, subdivision ordinances, but provides no time limit for a county's approval of a subdivision application. Thus, chapter 505 does not set forth a different time deadline for county subdivision applications. Further, it does not expressly prohibit a time deadline in Minn.Stat. § 15.99. On the contrary, Minn.Stat. § 505.03, subd. 2(c) (2006), explicitly provides that its terms "shall not extend the time deadlines for preliminary or final approval as required under this section, section 15.99 or 462.358, or any other law." Thus, Minn.

---

**1.** "Subdivision" means "[a]n area of real estate composed of subdivided lots." *American Heritage Dictionary* at 1722. Minnesota Statutes § 462.352, subd. 12 (2006), defines "subdivision" as

> the separation of an area, parcel, or tract of land under single ownership into two or more parcels, tracts, lots, or long-term leasehold interests where the creation of the leasehold interest necessitates the creation of streets, roads, or alleys, for residential, commercial, industrial, or other use or any combination thereof. . . .

Stat. § 505.03, subd. 2(c), does not alter the time deadlines established in Minn. Stat. § 15.99, subd. 2(a).

For all the foregoing reasons, I would conclude that Minn.Stat. § 15.99, subd. 2(a), applies to a subdivision application submitted to the county and requires the County to meet the 60–day time deadline.